# E. M. BRYAN v. STATE.

## No. A-2321.   Opinion Filed November 28, 1914.

### (144 Pac. 393.)

1.  **LARCENY—Indictment—Requisites.** An indictment based on section 2667, Rev. Laws 1910, should contain the following allegations:   (1) The felonious taking and asportation of the property in question without the knowledge or consent of the owner; (2) the ownership of said property;  (3) the felonious intent to deprive the owner of the same and the felonious intent to convert to the taker's own use.

2.  **SAME—Sufficiency.** For an indictment which is held insufficient under section 2667, Rev. Laws 1910, but which would have been good under the general larceny statute had it contained an allegation as to the value of the animal taken, see opinion.

3.  **TRIAL — Sufficiency of Proof — Reasonable Doubt.** (a) When the evidence on the part of the state fails to make out a case beyond a reasonable doubt, the verdict is contrary to the evidence.

    (b) When the witnesses on behalf of the state fail to testify to the essential facts necessary to establish the crime charged, it cannot be said, as a matter of law, that the court and jury are satisfied beyond a reasonable doubt of the guilt of the person on trial.

4.  **WITNESSES—Competency—Persons Jointly Charged.** When two or more persons are jointly charged with the commission of an offense, either is a competent witness for or against the other when he voluntarily elects to become such.

5.  **SAME—Party in Interest.** (a) The common-law rule excluding parties in interest or to the record from being witnesses in the cause has been eliminated by statute in this state.

    (b) To exclude a codefendant from testifying when he is not on trial would have the effect of keeping the rule in force when the reason therefor has been abrogated by statute.

6.  **WITNESSES—Evidence—Competency of Codefendant.** (a) When a person jointly charged with the commission of a crime by an indictment or information is not on trial himself, and voluntarily elects to become a witness for a codefendant who is on trial, he is subject to cross-examination the same as if he were not charged, and is not entitled to claim any exemptions from answering questions which might be incriminating, which grow out of the transaction under consideration.

    (b) The fact that a witness is a codefendant affects only his credibility. This is the only effect that a conviction would have under our statute.

(Syllabus by the Court.)

*Appeal from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

E. M. Bryan was convicted of larceny of a domestic animal, and appeals. Reversed.

*T. F. Shackelford,* for plaintiff in error.

*L. C. McNabb,* Co. Atty., for the State.

ARMSTRONG, P. J. The plaintiff in error, E. M. Bryan, was convicted at the May, 1913, term of the district court of Sequoyah county on a charge of larceny of a domestic animal, and his punishment fixed at imprisonment in the state penitentiary for a term of five years. The information upon which the conviction is based is as follows:

"In the name and by the authority of the state of Oklahoma, now comes L. C. McNabb, the duly qualified and acting county attorney in and for Sequoyah county, state of Oklahoma, and gives the district court of Sequoyah county, state of Oklahoma, to know and be informed that E. M. Bryan and Doc Tatum did, in Sequoyah county, in the state of Oklahoma, on or about the 13th day of December, in the year of our Lord one thousand nine hundred and thirteen, and anterior to the presentment hereof, commit the crime of larceny of a domestic animal, in the manner and form as follows, to wit: That is to say, they, the E. M. Bryan and Doc Tatum, in the county and state, and on or about the date aforesaid, then and there being, did then and there unlawfully and feloniously and by fraud and stealth take, steal, and carry away a certain domestic animal, to wit, a black and white spotted hog, further description not known to the county attorney, the property of H. S. Cole, with the felonious intent on the part of them the said E. M. Bryan and Dock Tatum to deprive him, the said H. S. Cole, thereof contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

When the case was called for trial defendant Tatum elected a severance and the plaintiff in error, Bryan, was placed on trial.

The testimony introduced on behalf of the state was entirely circumstantial. The prosecuting witness, Cole, testified that he had been unable to find certain of his hogs; that on the 13th

day of December he and his son were searching for them; that they saw plaintiff in error near an old house; that he had a wagon and team, and Dock Tatum was with him; that when he got near the house the plaintiff in error drove away; that he followed them; that plaintiff in error got out of the wagon and went into some woods near by, then came back to the wagon and drove up to a gate, where he (Cole) overtook him; that he inquired about his hogs, and that plaintiff in error told him he had seen them at different places; that in the wagon was a freshly dressed hog with its head severed. Cole, after some conversation with plaintiff in error and Tatum, returned to the place that plaintiff in error had been seen at the edge of the woods, and found the head of a hog covered up with leaves. On cross-examination this witness testified as follows:

"Is that your hog's head there? A. I couldn't swear positively that it is. Q. Was that your hog that you saw in the wagon? A. I couldn't say that it was; I couldn't swear positively that it was. Q. Don't you know it was not? A. No, sir; I don't. Q. You won't swear to this jury that it was your hog? A. No, sir. Q. You don't know the color of that hog? A. No, sir. Q. You don't know the sex of that hog, do you? A. No, sir."

The testimony of Bennie Cole, son of the prosecuting witness, is practically the same, including the cross-examination, as that of his father.

On behalf of the plaintiff in error, Ida Bryan, his wife, testified that they were moving from one farm to another on the date her husband was accused of committing the offense in question; that Dock Tatum and her husband brought the hog in question home on the 13th of December; that the hog was dressed, the head was severed from the jowl and badly mutilated, that the ears were intact, and bore her husband's mark; that she gave the head to the dogs.

Plaintiff in error testified on his own behalf that he owned the hog in question; that it bore his mark; that he killed the same, and he detailed the circumstances. He denied getting out of the wagon as testified to by the prosecuting witness.

The first assignment of error is based on the contention that the court erred in overruling the demurrer to the information. The information is based upon section 2667, Rev. Laws 1910, which is as follows:

"Any person in this state who shall steal any horse, cow or hog shall be guilty of a felony and upon conviction shall be punished by confinement in the penitentiary for a term of not less than one year nor more than ten years: Provided, that where the horse or horses stolen are proven to be work stock the punishment shall be not less than three years nor more than ten years. The word 'horse' as used in this section shall include all animals of the equine species, and the word 'cow' shall include all animals of the bovine species."

Under this section of the statute it is necessary to plead and prove the following facts: The felonious taking and asportation of the property without the knowledge or consent of the owner; the felonious intent to deprive the owner thereof and to convert the same to the taker's own use; and the ownership of the property in question. In *Crowell v. State*, 6 Okla. Cr. 148, 117 Pac. 883, we said:

"When a prosecution is predicated upon section 2606 [Comp. Laws 1909, which is section 2667, Rev. Laws 1910, referred to *supra*], to support a conviction, the ownership of the animals stolen must be alleged and proved, and it is necessary to allege and prove a felonious intent on the part of the taker to deprive the owner thereof and to convert the same to his (the taker's) own use, which specific proof is not necessary to support a conviction under the general larceny statute."

The information in the case at bar does not charge an offense under section 2667, Rev. Laws 1910, *supra*. Neither does it charge an offense under the general larceny statute, for the reason that the value of the animal taken is not set forth. It follows, therefore, that the demurrer should have been sustained.

The next assignment of error is based upon the contention that the verdict is contrary to the evidence. It will be observed from the testimony *supra* that the prosecuting witness was absolutely unable to identify the property in question as his property or to testify that the plaintiff in error stole his hog, and no other evidence supplies this deficiency. Just how a court

and jury can be satisfied beyond a reasonable doubt that the plaintiff in error is guilty when the prosecuting witness does not know, and the testimony on behalf of the state fails to show this fact, is not apparent. Certainly a court and jury acting under their oaths could not reach a more positive conclusion than the prosecuting witness himself. The plaintiff in error may be guilty and may be a thief, but the state's evidence fails wholly to establish guilt as required by law. This conviction is clearly contrary to the evidence. The state should make a stronger case on a retrial of this cause if it is to be tried again.

It is next contended that the court erred in refusing to permit Dock Tatum, who was jointly charged by the information with this offense, to testify on behalf of plaintiff in error. The record shows that Tatum was called as a witness for plaintiff in error. The county attorney objected to his testifying, on the ground that he was jointly charged by the information with the commission of the offense. The court sustained the objection; the effect of his holding being that a person jointly charged with the commission of an offense could not become a witness for the person on trial until after he had been tried or discharged from prosecution. The principle involved in this contention is settled by this court in *Buxton v. State, ante,* 143 Pac. 58, wherein we say:

"The only assignment remaining which requires notice is that 'the court erred in overruling the defendant's motion for an instructed verdict for the defendant A. F. Buxton.' The record shows that, at the close of the state's evidence in chief, defendant A. F. Buxton requested the court to instruct the jury to return a verdict of not guilty as to A. F. Buxton, and that the court stated that, at the close of the evidence, he would hear defendant on the proposition of so advising the jury. After the evidence was all in, and before the case was argued, the county attorney moved the court to advise the jury to acquit defendant A. F. Buxton. Thereupon the court so instructed the jury, and stated: 'If the jury concur in the opinion of the court, you may sign this verdict by one of your number as foreman, and, if not, you may indicate it, and I will prepare the general instructions. (The jury indicate that they prefer to wait until they go to their jury room to consider their verdict.)'

"Our Procedure Criminal provides: 'If, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. But the jury are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict.' (Section 5896, Rev. Laws 1910.)

"Defendant John Buxton contends: 'That he was entitled to have the testimony of his codefendant given under circumstances most favorable to him; at least, not unnecessarily unfavorable to him.'

"Under the statute, the jury are not required to take the advice given by the court. Whether or not the court erred in this respect depends upon the effect to be given the following statutory provisions:

"Section 5046, Rev. Laws, provides: 'No person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime; but such interest or conviction may be shown for the purpose of affecting his credibility.' There are certain statutory exceptions to this provision which have no bearing upon the questions involved.

"Procedure Criminal (section 5882, Rev. Laws) provides: 'Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases are applicable also in criminal cases.'

"Section 5881 (Rev. Laws) provides: 'In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this state, the person charged shall at his own request, but not otherwise, be a competent witness.'

"Under section 5046 (Rev. Laws), all persons are competent witnesses, unless shown to be within the statutory exceptions, and the reason for many rules of the common law, based on the incompetency of parties, has ceased to exist.

"Under section 5881, in all criminal trials 'the person charged with crime shall at his own request, but not otherwise, be a competent witness.'

"By these provisions, when a defendant requests to be a witness, and takes the witness stand in his own behalf, he has voluntarily changed his status from defendant to witness, and he becomes a competent witness for all purposes. It does not matter whether his testimony is for or against himself, or for or against his codefendant. The only limitation in the statute is

that he cannot be compelled to testify either for himself, his codefendant, or for the state, while he is a party in the case. The following provisions of our Procedure Criminal prescribe the manner and mode of compelling a codefendant to testify as a witness, conditioned upon his ceasing to be a party in the case:

"Section 5879 (Rev. Laws 1910) provides: 'When two or more persons are included in the same indictment or information the court may, at any time before the defendants have gone into their defense, on the application of the county attorney, direct any defendant to be discharged from the indictment or information, that he may be compelled to be a witness for the state.'

"Section 5880 (Rev. Laws 1910) provides: 'When two or more persons are included in the same indictment or information, and the court is of opinion that in regard to a particular defendant there is not sufficient evidence to put him on his defense, it must, before the evidence is closed, in order that he may be compelled to be a witness for his codefendant, submit its opinion to the jury, who, if they so find, may acquit the particular defendant for the purpose aforesaid.'

"The record does not show that defendant John Buxton requested the court to discharge his codefendant, or moved the court to direct a verdict of acquittal on the ground that the evidence for the state was insufficient to put his codefendant on his defense, and in order that he might be compelled to be a witness for his codefendant, John Buxton. The motions to acquit were made by defendant A. F. Buxton in his own behalf. The record does show that this defendant's codefendant on his own request became a witness, not only in his own behalf, but in behalf of his codefendant, John Buxton, as well. The court further charged the jury as follows: 'You are instructed that the court is of the opinion that the testimony in this case is insufficient to warrant a verdict of guilty against the defendant A. F. Buxton upon a charge of murder, or of manslaughter in the first degree, and that you should return a verdict of not guilty as to the defendant A. F. Buxton.'

"If it were shown by the record that, when the state closed its evidence in chief, defendant John Buxton announced that he intended to use his codefendant as a witness, the point raised would be properly presented. We think that, in the absence of such a showing, this defendant cannot be heard to complain. It further appears upon the whole record that there could have been no prejudicial error in the court's ruling, so far as it related

to defendant A. F. Buxton's motion to direct a verdict of acquittal, as defendant John Buxton had the full benefit of the testimony of his codefendant as a voluntary witness in his behalf."

In *McGinness v. State,* 4 Wyo. 115, 53 Pac. 492, the Supreme Court of Wyoming, in discussing the principle herein involved, said:

"The common-law rule excluding parties in interest or to the record from the witness stand is no longer of efficacy when the statute permits a defendant to testify. To exclude a codefendant from testifying, when   *   *   *   not on trial, for the defendant on trial, in a criminal case, is to keep alive a rule, if ever in force in such cases, when the reason for the rule is gone.   *   *   *   If interest and being a party to the record do not exclude a defendant on trial from the witness stand, upon what reasoning can a codefendant, not on trial, be adjudged incompetent?"

The county attorney in his brief urges that, if Dock Tatum had been permitted to testify, it would have worked a hardship on the state, for the reason that he would not have had to give any testimony incriminating himself. This contention is without foundation. Dock Tatum could not be forced to testify, but if he was a willing witness, and there is nothing to indicate that he was not such for plaintiff in error, when he took the stand he waived his right to claim immunity and decline to answer incriminating questions arising out of the transaction, and the state would have the right to cross-examine fully on all material propositions involved in his testimony. The common-law rule disqualifying persons charged with crime as witnesses is eliminated in this state by statute. The question of whether or not a person jointly charged shall voluntarily take the stand for his codefendants is one for his own determination, and when he has concluded to act as a witness, the court is without authority in law to deny the plaintiff in error the right to have his testimony. It is entitled to go to the jury for what it is worth. The fact that he was jointly charged with the plaintiff in error is before the jury, who are the sole judges of credibility. If this were not the rule, important witnesses could be prevented from testifying, no matter how innocent they might

be of the charge, or how. valuable their testimony might be to a codefendant. The law does not contemplate that the state shall have the right to dismiss a prosecution and use a witness in its own interest and at the same time have the right to file an information arbitrarily and deprive any person on trial of valuable testimony. No unreasonable advantage is intended to be conferred on the state by the law, and no unfair privilege to any person on trial. A conviction under our statute would not have the effect of disqualifying a witness in this character of cases. Then why should the fact that some individual or official had filed a complaint against him disqualify any person to testify? The proposition of whether or not a witness has been convicted goes only to his credibility. The fact that one is jointly charged with the person on trial could have no greater effect. The Supreme Court of Oklahoma Territory, in *Miller v. Territory*, 15 Okla. 422, 85 Pac. 239, said:

"An accomplice, separately indicted and separately tried, after conviction is a competent witness, either on behalf of the defendant or for the prosecution." ·

It appears to be the general rule under statutes similar to ours that, where a person is jointly charged with the commission of a felony and separately tried, each is a competent witness for or against his codefendant when he voluntarily elects to become such. See *People v. Newberry*, 20 Cal. 439; *State v. Bogue*, 52 Kan. 79, 34 Pac. 410. See, also, *United States v. Ford*, 99 U. S. 594, 25 L. Ed. 399.

The foregoing are the only assignments which we feel called upon to discuss. For the reasons indicated, the judgment is reversed, and the cause remanded, with directions to the trial court to permit the filing of a new information if the county attorney desires to prosecute further.

DOYLE, J., concurs. FURMAN, J., absent on account of sickness.