J. M. BALDWIN *et al.* v. STATE.

No. A-2158.   Opinion Filed December 12, 1914.

(144 Pac. 634.)

1.   **GAMING—Prosecution—Scope of Inquiry—Evidence.**  When an indictment or information charges the person or persons on trial with gaming, under the provisions of section 2499, Rev. Laws 1910, the sole and only issue is:  Was such offense committed in the manner and form charged?

2.   **APPEAL—Ground for Reversal—New Trial.**  This court has often held in its opinions that the proof introduced on the trial of a person charged with a specific offense should conform to the issue as laid, and the county attorneys have been warned repeatedly from excursions into other issues which could have no purpose other than by improper methods to prejudice the minds of the jurors.  When the record discloses the fact that the county attorney has been guilty of such unfair conduct and ruthless disregard of the rules of evidence, the trial court should set aside a verdict of conviction and see that the case is tried according to law; otherwise this court will reverse a judgment and require him so to do.

3.   **EVIDENCE—Other Offenses.**  On the trial of a person or persons charged with gaming, the county attorney has no right to attempt to prove that the person or persons charged were engaged in the maintaining of a place where intoxicating liquors were kept and sold, or that any one of them has been guilty of corruption in o__ce, or that any one of them has been advised by others to discontinue a lawful business and engage in conducting a saloon.  Such offenses are foreign to the issue and should be prosecuted by separate information or indictment, if the facts so warrant.

4.   **TRIAL—Instructions—Circumstantial Evidence.** When the proof on the part of the state is wholly circumstantial, it is the duty of the trial court to give the law of circumstantial evidence in his instructions.

5.   **SAME.** (a) It is as much the duty of the trial court to give a correct statement of the law of circumstantial evidence as it is to give any instruction whatever.

(b) For an instruction condemned as incomplete and not a fair statement of the law of circumstantial evidence, as applied to the facts in the record of the case at bar, see opinion.

(c) For a correct statement of the law of circumstantial evidence which should have been given by the trial court, see opinion.

(Syllabus by the Court.)

*Appeal from County Court, Osage County;*
*Paul B. Mason, Judge.*

J. M. Baldwin and others were convicted of gaming, and appeal. Reversed and remanded.

*J. M. Worten,* for plaintiffs in error.

*S. I. McElhoes,* Asst. Atty. Gen., for the State.

ARMSTRONG, P. J. The plaintiffs in error, J. M. Baldwin, Rowe Little, and M. R. Hill, were jointly tried and convicted at the July, 1913, term of the county court of Osage county, on a charge of gaming. The jury fixed the punishment of Little at a fine of $50 and imprisonment in the county jail for a period of 30 days, the punishment of Baldwin at a fine of $100 and imprisonment in the county jail for a period of 30 days, and the punishment of Hill at a fine of $100 and imprisonment in the county jail for a period of 30 days. The record brings the case up as to all three of the parties. The brief filed by counsel is for Baldwin and Little. No brief is filed on behalf of Hill.

There are many assignments of error, only a few of which, however, will be considered. This is a case wherein the proof is based entirely on circumstances. The officers raided a joint in the town of Bigheart about the 8th of March, 1913. There were some twelve or fifteen persons in the place at the time, a number of whom departed from the scene hurriedly when the offi-

cers appeared. Poker chips and money and a deck of cards were found upon a table. The plaintiffs in error were in the place at the time, and two of them were seated at a table upon which were cards, money, and poker chips. The plaintiffs in error were arrested, charged with playing poker.

The county attorney, in the cross-examination of the plaintiffs in error, seems to have lost sight of the issue that was on trial, and extended his examination into issues that could have had no relation to the case, except to show the jury that he was trying men who were either engaged in running a gambling house, selling whisky, or otherwise violating the law. The sole and only issue in the case on trial was: Did the plaintiffs in error, at the time and place alleged, play poker for money? When plaintiff in error Little was on the stand as a witness for himself, the county attorney asked:

"Q. Did they have any whisky in there? A. I think so. Q. Who was selling it?"

On objection being interposed, this question was followed with another, to wit:

"Q. Was anybody drinking any whisky?"

On objection being interposed, the witness was asked if he saw money on the table, and then was asked:

"Q. Had you ever assisted in the running of this house up there, Mr. Little?"

Objection was interposed and overruled. Witness was then asked:

"Q. Who was the owner of the building you were in? A. G. R. Little. Q. Who is G. R. Little, if you know? A. My father. (Objection overruled.)"

Later witness was asked:

"Q. Did you ever tell John Malone, in the presence of Mr. Hays, that you were running a barber shop down there, and that your father decided to close that barber shop up and run a gambling house upstairs? (Objected to. Sustained.) Q. I will ask you if you ever told Mr. Malone, after you had been arrested and charged with this offense, in Tulsa, in the presence of Mr. Hays, that you were running a barber shop, and that your father decided to sell out the barber shop and let you run a gambling house upstairs?"

Objected to and overruled, and, before answering, the witness was asked the following question:

"Q. I am talking about the building this gambling was in, to make it clear to you, Mr. Little. I might have had in mind the wrong place about where you were when Henry Majors came in. It wasn't upstairs, was it? A. It was downstairs. Q. Didn't you state to John Malone, in the presence of Mr. Hays, at Tulsa, that this was your money, and that your father—you had been running a barber shop, and that he decided to not let you run a barber shop and put in a gambling house instead, or words to that effect? (Objected to, and overruled.)"

Then the following question was asked:

"Q. I will ask you if you didn't tell, after your arrest charged with this crime, if you didn't tell John Malone in Tulsa, that your father advised you to get out of the barber shop and run a saloon, and that this was your money, and that you were going to fight this case, thinking that John Malone was going to resign, and your testimony would be taken for more than Henry Major's? (Objected to, and overruled.) * * * Q. Who had charge of that house? A. I don't exactly know. Q. Well, do you about know? A. I couldn't say. Q. Who was running it? A. I don't know that. Q. Who was the manager? A. I couldn't say. Q. It was your father's building? A. Yes, sir. Q. You don't know who had it in charge? Who did he rent it from? A. Yes, sir. Q. Now don't you know that Jim Baldwin had the running of that building and was running a whisky and gambling house in there?"

Baldwin was a codefendant. On objection being interposed to this class of examination, the following was asked:

"Q. Now the question was, Mr. Little, you had been there often, you stated, and do you know whether or not Mr. J. M. Baldwin, one of the defendants here, had control of the house and managed the house or not? (Objected to and overruled.)"

This character of examination was not calculated to throw any light upon the issue on trial. If the county attorney wanted to prosecute Baldwin for maintaining a gambling house and a place where intoxicating liquor was sold, he had a right to do so, and it was his duty to do so, if the facts warranted, but that issue was not raised in the case at bar, wherein the persons were charged with the offense of gaming only. A similar examination was indulged in in connection with the cross-examination

of witness Hill, wherein the county attorney apparently sought to produce before the jury facts to indicate that Hill, as town marshal, and other city officials were permitting a gambling house and joint to be run in the town. These issues had nothing whatever to do with the case on trial; and, while county attorneys are to be commended for the faithful discharge of their duty, it is not their duty to undertake, by unfair methods and a wanton disregard of the law of evidence, to seek convictions in this manner. The question of whether or not the plaintiff in error Little admitted that the money seized from the gambling table was his could have been properly drawn out, but not by connecting it with the question of whether or not his father had advised him to abandon a legitimate business and open a saloon in violation of law. Plaintiff in error cannot be convicted because some one had given him bad advice. Neither should plaintiff in error Hill have been convicted because the city authorities, including himself, were permitting the law to be violated by paying stipulated fines. All of these offenders should have been indicted and prosecuted under the statutes penalizing corruption in office, if the facts warranted; but, for the purpose of securing a conviction of the marshal for playing poker, the corruption of the city officials had nothing to do with the issue, and was not admissible for any purpose.

Counsel complains of the following instructions of the court:

"The jury are instructed that circumstantial evidence is to be regarded by the jury in all cases, and is many times quite as conclusive in its convincing power as direct and positive evidence. When it is strong and satisfactory, the jury should so consider it, neither enlarging or belittling its force. It should have its just and fair weight with you, and if when it is taken as a whole, and fairly and candidly weighed, it convinces the guarded judgment beyond a reasonable doubt, you should convict, and on such conviction you are not to fancy situations of circumstances which do not appear in the evidence, but you are to make those just and reasonable inferences from circumstances which the guarded judgment of a reasonable mind would ordinarily make under like circumstances. And if, in connection with the other evidence before you, you then have no reasonable

doubt as to the guilt of the defendants, you should convict them, but, if you entertain such doubt, you should acquit them."

This was not a complete and correct statement of the law of circumstantial evidence, as applied to the facts disclosed by the record, and should not have been given. If the foregoing instruction is to be given, it should be accompanied by one giving the law of circumstantial evidence to the jury substantially as follows:

"You are instructed that the state relies for a conviction in this case upon what is known as circumstantial evidence, and in this matter you are instructed that, to warrant a conviction upon circumstantial evidence, each fact necessary to the conclusion sought to be established (that is, the guilt of the defendant) must be proved by competent evidence, beyond a reasonable doubt, and that all the facts and circumstances proven should not only be consistent with the guilt of the accused, but consistent with each other, and inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and sufficient to produce in your minds the reasonable moral certainty that the accused committed the offense charged against him. And you are instructed that, when the circumstances are sufficient under this rule herein given you, they are competent and are to be regarded by the jury as competent for your guidance as direct evidence."

The instruction given was prejudicial; at least, it did not state the rule of law correctly. These people may all be guilty of this offense and many others, but upon a retrial of this case the county attorney should try it according to law and, if other offenses have been committed, file further informations and try them in the same manner. It is the duty of the trial court to see that a case is properly tried.

The judgment is reversed, and the cause remanded, with directions to the trial court to grant a new trial, to be conducted according to law.

DOYLE, J., concurs. FURMAN, J., absent on account of sickness.