This appeal is from a judgment of conviction for rape in the first degree and sentence of imprisonment *Page 257 
for the term of 15 years in the penitentiary. The information charges that in Harper county on or about the 6th day of April, 1919, the defendant, George Ferbrache, accomplished an act of sexual intercourse with one Frances Bailey, a female, under the age of 14 years and not the wife of the said defendant.
The assignments of error go to the sufficiency of the evidence to support the verdict, the admission and rejection of certain evidence, and the refusal to give requested instructions.
It appears that the prosecutrix, at the time said crime is alleged to have been committed, was living with her parents on a farm about four miles west of Buffalo, and was in her thirteenth year, her fourteenth birthday being March 2, 1920. She was the oldest child. Her two brothers, one in his twelfth year and one in his ninth year, and a little sister in her fourth year, constituted the rest of the family. The defendant worked for her father as a farm hand from the 3d day of March to the 11th day of April, 1919. He was in his twentieth year. The prosecutrix attended school until about Christmas, at which time her pregnancy was discovered. She gave birth to a child on the 7th day of January, 1920.
The prosecutrix testified:
"One morning just before I went to school and a few days before he quit working for my father, George Ferbrache came into my room and said, `Can I do that?' I told him he could, and I laid down on the bed. He got on me and tried to put his instrument in me. After he got through, he went to the barn. I got up, finished making my bed, and went to school. My father and mother were over at my grandfather Harsha's that morning. My grandmother was sick. About a week later my father and mother were over to grandfather's. It was after night. The boys were out at the barn, and George came into the kitchen and asked me, `Can I do that again?' I told *Page 258 
him he could. I went to my room, and he followed me. I laid down on the bed, and he got on me and began to work himself up and down, and his penis penetrated by privates. Then he got up and went out to the barn, and I went and washed my dishes. After he quit working for my father he came to our place one night. My father was over at Mr. Pulsifer's. My brothers were at the table reading. After they went to bed, he asked me if he could do this again. I told him, `Yes.' We went into my room, and he had sexual intercourse with me. Shortly after my parents came home, and he stayed at our place that night."
Upon cross-examination she stated:
"My father was the first one to talk to me about my condition. It was Christmas night in my room. He asked me who was the father of the child. I told him George Woodworth. I never mentioned George Ferbrache until after Dr. Miller and Dr. Walker said it was a fully developed nine months' baby on the day George Woodworth had his preliminary. Then I told father that George Ferbrache was its father."
She was then asked:
"Now, you had George Woodworth arrested, did you not, charging him with being the father of your child, and his preliminary examination was had on the 27th day of January? (The state's objection sustained and exception reserved.)
"Q. Now, in the preliminary examination of this defendant, I will ask you if these questions were asked and answers given: `Q. He never tried but once after that? A. He asked me to. Q. And he never had intercourse but the one time? A. No, sir.' Did you so testify? A. I don't remember whether I did or not."
Otis Bailey testified:
"Frances Bailey is my daughter. She was fourteen years old the 2d of this month. The defendant worked for me from March 3, 1919, until the 11th day of April. The last week he was at my house I took my wife over to her mother's, and I remember being there in the forenoon not long following that, *Page 259 
and in the last days of April I took my wife to Mrs. Pulsifer's. It seems to me it was about 10 o'clock that night when we got home and found the defendant there."
Cross-examined, he testified:
"I first learned my daughter was pregnant on Christmas night. I accused her of being in that condition, and she said George Woodworth had been intimate with her. I made complaint against him, and he was arrested in Missouri. I knew nothing against this defendant until the preliminary hearing on the Woodworth charge. On that day I took her in my car and drove down this street, and I told her I didn't want anything whatever hidden. I said; `Some one else has been intimate with you.' She broke down and cried. I said: `There is no use to cry. I want the whole truth right now.' Then I said, `Daughter, nine months ago George Ferbrache was at our house.' Then I asked her if that was his child, and she said it was."
The defendant, testifying in his own behalf, stated: That while he worked for Mr. Bailey he would get up at 5 o'clock and feed, have breakfast about 6 o'clock, then would harness his team and go to the field and work until noon; that he was never alone at the house with the prosecutrix, and if her parents went to her grandmother's either in the morning or in the evening, while he was there, he did not know it; that on one occasion after he quit working for Mr. Bailey he stopped at the house about dark and found the prosecutrix and her two brothers there; the boys were studying their lessons, and he helped them to solve some examples; that her brothers were present all the time he was there; that after leaving he met Mr. and Mrs. Bailey about a quarter of a mile from the house and stopped and talked to them; that he never attempted to have intercourse with her at any time. He denied the acts she testified to and denied having had improper relations of any kind, at any time, with her. *Page 260 
For the defense, J.A. Harsha testified:
"I live three-quarters of a mile north of Otis Bailey. His wife is my daughter. If he was at my house in April, I or my wife did not see him there. He was there in January, and the next time he came over there it was in the summer, and his wife was with him."
Edna Anderson testified:
"I am deputy court clerk, and as stenographer took the testimony on the preliminary examination of George Ferbrache, and transcribed it."
Thereupon counsel for the defendant offered a part of the transcript of the testimony of the prosecutrix, as follows:
"Q. During the several days he worked there, was he ever with you, just you and him alone, and have a chance to talk to you? A. I don't know. Q. He just had intercourse that one time? A. Yes, sir."
Several errors are assigned on rulings of the court sustaining the state's objections to questions asked the prosecutrix concerning her testimony on the preliminary examination of Woodworth, the first person she accused of being the father of her child.
It is contended that these rulings of the court were prejudicial to the defendant.
In Douglas v. State, 19 Okla. Cr. 257, 199 P. 927, it is said:
"The general rule is that, where a witness has made statements in writing different from those made on the trial, and the statements are shown the witness, who admits having made them, they may be read in evidence for the purpose of impeachment. The credibility of the prosecutrix may be impeached by proof that she has made statements relevant to the issues out of court, contrary to what she has testified to at the trial." *Page 261 
In our opinion the court should have permitted the prosecutrix to answer these questions, and the court erred in sustaining the objections made by the state.
It is also contended that the evidence is insufficient to justify or support the verdict, in that there is no corroborating evidence nor corroborating circumstances tending to connect the defendant with the commission of the crime.
In Douglas v. State, supra, it is said:
"Under the laws of this state a conviction for rape may be had upon the uncorroborated evidence of the prosecutrix, however, where the testimony of the prosecutrix is contradictory, and her reputation for truth and veracity is impeached, and the defendant testifies and denies specifically the testimony of the prosecutrix, and his testimony is corroborated, the testimony of the prosecutrix, standing alone, is not sufficient to warrant a conviction."
In Morris v. State, 9 Okla. Cr. 241, 131 P. 731, it is said:
"This court does not hold with some that, as a matter of law, rape cannot be established by the uncorroborated testimony of the prosecutrix, but in common with all courts recognizes that, without such corroboration, her testimony must be clear and convincing. And, where the testimony of the prosecutrix bears upon its face inherent evidence of improbability, there should be corroboration by other evidence, connecting the defendant with the commission of the crime. The law is that the life or liberty of a citizen shall be taken only in case the right to do so is established beyond all reasonable doubt; and while there is no rule of law which forbids a jury to convict of rape on the uncorroborated testimony of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony, yet the courts have always recognized the danger of conviction on her uncorroborated testimony, and the testimony of the prosecutrix, if inherently improbable and uncorroborated, will not justify or support a conviction; as the only reasonable conclusion in such cases is *Page 262 
that such verdicts are the result of passion or prejudice, and therefore contrary to law."
In the case of State v. Ellison, 19 N.M. 428, 144 P. 10, it is said:
"It is of course true, that in a sense, the testimony of a prosecutrix must be corroborated. That is, it must bring together a number of surrounding facts and circumstances which coincide with and tend to establish the truth of her testimony. Without such surrounding facts and circumstances, the bald statement and charge of a woman against a man would be so devoid of testimonial value as to render it unworthy of belief, and to cause it to fail to meet the requirements of the law, namely, evidence of a substantial character. In this sense there must, of course, be corroboration. In some of the states, by reason of the terms of the statute, corroboration must come from some outside source in the form of testimony of an independent character, disconnected from the testimony of the prosecutrix. It is not in this sense, in this jurisdiction, that the prosecutrix must be corroborated."
In this case the state sought to corroborate the prosecutrix by the testimony of her father to the effect that her parents were absent from home at the time of the relations she testified to. The mother of the prosecutrix or her brothers, however, were not called as witnesses, and there is positive testimony for the defense that her parents did not visit her grandmother at said times.
The testimony of the prosecutrix on the trial was contradictory, and conflicted with her testimony on the defendant's preliminary examination. The fact that she had first charged another man as being the father of her child, and the further fact that she waited nearly a year after the act of sexual intercourse is alleged to have been committed before charging the defendant, and the undisputed fact that it was on the suggestion of her father that she made complaint against this defendant, tends strongly to discredit her testimony. *Page 263 
Upon the whole case, we find that the evidence is not sufficient to sustain the conviction.
For the reason stated, the judgment appealed from is reversed.
MATSON and BESSEY, JJ., concur.