## WINFIELD SCOTT MORRIS v. STATE.

No. A-4710.    Opinion Filed May 29, 1925.
(236 Pac. 443.)

(Syllabus.)

1. **Appeal and Error—When Conviction Reversed for Insufficiency of Evidence.** This court is reluctant to reverse a case on the ground of insufficiency of the evidence, and it is only where it is clearly against the weight of the evidence, appears to have been influenced by passion, prejudice, or by reason of some error or is insufficient to establish guilt beyond a reasonable doubt that a case will be reversed for this reason.

2. **Witnesses—Impeachment by Showing Contradictory Statements Made Outside Court—Laying Predicate.** For the purpose of affecting his credibility, a witness may be impeached by proving that he has made contradictory statements of a material matter outside of court, but before such impeachment is admissible the attention of the witness must first be called to the time, place, person, and circumstances of the supposed contradictory statements as a predicate or foundation.

3. **Same—Erroneous Exclusion of Testimony for Laying Predicate for Impeachment.** When questions touching a material part of the testimony of a witness are propounded for the purpose of laying a predicate or foundation for impeachment, it is error for the court to exclude such proffered testimony.

4. **Evidence—When Evidence of Other Offenses Admissible.** Evidence is properly admitted which tends to throw light on the matter at issue, or which tends to show motive or the intent of the witness, or the relation of the parties, even though it may tend to show the commission of some other offense or otherwise reflect on the defendant. But this class of evidence should not be prolonged further than necessary to develop the purpose for which it is admissible.

Appeal from District Court, Woodward County; James B. Cullison, Judge.

Winfield Scott Morris was convicted of manslaughter in the second degree, and appeals. Reversed.

L. F. Robertson, for plaintiff in error.

George F. Short, Atty. Gen., and Leon S. Hirsh, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error will be referred to as defendant. Four assignments of error are presented by the defendant. First, the insufficiency of the evidence; second, error of the court in excluding impeaching evidence on the part of the defendant; third, error of the court in admitting incompetent evidence prejudicial to the defendant; fourth, error in the court's charge on circumstantial evidence.

Upon the first assignment, i. e., insufficiency of the evidence, the record discloses a state of facts about as follows: The defendant was a man about 37 years of age, and the deceased, Jennie Longfellow, a woman of mature years. The defendant had roomed at a boarding house kept by the deceased and for more than a year they had been keeping company, were at one time engaged to be married, and their relations apparently had been meretricious. Both were divorced persons; the defendant having one child and the deceased two. Some months prior to the occasion in question the defendant had ceased paying attention to deceased and had avoided her. She remained, however, deeply infatuated with him, pursued him with her attentions, appeared to be jealous, was on occasions hysterical, and had threatened to take her own life. The principal witness for the state was one Rufus Ring, a young man about 21 years of age, who was keeping company with the deceased and seemed to be much enamoured of and under her influence. At the time of the occurrence the defendant had an engagement to meet another woman some three or four miles in the country from the city of Woodward. The deceased was riding with the witness Ring, seeking the defendant, and, observing him drive away from the city, prevailed on Ring to follow the car of the defendant. Ring did so reluctantly, and in doing so attempted to avoid or lose the pursuit of defendant, and on two occasions deceased got out of Ring's car and attempted to follow on foot, and by that means prevailed on Ring to

continue to follow the defendant. At the place on the highway where defendant was to meet the other woman he turned his car and stopped. The deceased and Ring there came up and also stopped. The cars were facing in opposite directions, slightly overlapping. Deceased got out of the car in which she was riding, went to the car of defendant, and demanded that he take her back to town. The defendant refused to have anything to do with her, telling her to return the way she came, and a bitter quarrel and scuffle took place; the deceased clinging to defendant, declaring she would hold on to him and that he must take her back. At one time during the quarrel defendant asked Ring to crank his car so that he could leave, which the deceased forbade him doing. Finally the deceased appeared to realize that defendant did not intend to take her back to Woodward, nor to have anything further to do with her, and she sat down upon the running board of his car, cried and appeared to be thinking deeply. The deceased got up from the running board, walked to the rear of the car of the witness Ring, at which point a shot was fired, and the deceased fell and died immediately. Both the defendant and Ring ran to the body, and both made an exclamation in substance that "Jennie" had killed herself. The entrance wound that caused death was in the temple above the eye, at the hair line, smooth on one side, with a groove where it had cut the flesh, and jagged on the other, about the size of a 25-cent piece, passing through the brain and making an exit through the skull on the opposite side and lodged under the skin. Brain matter from the entrance wound was on several parts of the body. The weapon used was a 32-caliber pistol, shooting fine black powder and a soft nosed bullet. There were no powder marks or powder burns. The exit wound was the size of the bullet as "mushroomed." Very soon after the shot was fired, another car came along driven by the witness Williams, with his wife and the other woman defendant had arranged to meet. Williams and Ring remained with the body while

defendant went to the city of Woodward, notified the officers, a physician, and an undertaker, and at that time delivered to the undertaker the pistol from which the shot was fired. On the return of the defendant with the officers, the defendant and Ring were both held, one confined in the city jail and one in the county jail, a coroner's inquest was had, and both testified. There was very little, if any, material discrepancy in their testimony before the coroner's inquest. At the preliminary and on the final trial there was considerable discrepancy between the evidence of the witness Ring and that given by him at the coroner's inquest.

The witness Williams, who came to the scene shortly after the shooting, gave in detail a statement made by the witness Ring while they waited at the body during the time that defendant had gone to the city of Woodward, which statement was in several particulars contradictory of the testimony of this witness at the final trial.

The theory of the state is that the defendant fired the shot which caused the death of the deceased. The theory of the defense is that during the course of the altercation the deceased took the pistol out of the pocket of the car of the defendant where it was habitually carried, and the evidence shows that she was in a position to have done so, and after she realized that her associations with defendant were terminated killed herself. If the theory of the state is true, the crime was murder, and conviction and a verdict for second degree manslaughter wholly unwarranted. If the theory of the defense is correct, the defendant should have been acquitted.

The testimony of the defendant impresses us as being candid. That of the witness, Ring, not entirely disinterested, and in several particulars contradictory or impeached by his own statement. No reason or motive is apparent why the defendant should slay the deceased. All relations between them had been broken for some time, and he was

seeking to avoid her. He went to the place to meet another woman who was in fact in the car with the witness Williams. At the time the shot was fired the quarrel had terminated and he was ready to leave the scene, and according to the evidence of both himself and Ring, he turned on the switch of his car preparatory to leaving.

This court is reluctant to disturb a verdict on the insufficiency of the evidence, and will do so only when it appears that the state's evidence fails to establish guilt to the certainty required by law. The jury must have had serious doubt, for no other explanation can be made of their verdict of manslaughter in the second degree. Bryan v. State, 11 Okla. Cr. 180, 144 P. 393; Jackson v. State, 12 Okla. Cr. 446, 158 p. 292; Davis v. State, 18 Okla. Cr. 112, 193 P. 754; Teague v. State, 10 Okla. Cr. 43, 133 P. 1134; Temple v. State, 15 Okla. Cr. 176, 175 P. 733; Sies v. State, 6 Okla. Cr. 142, 117 P. 504; Nash v. State, 8 Okla. Cr. 1, 126 P. 260.

Considering the second assignment, i. e., exclusion of evidence offered by the defendant, while the witness Ring was on the stand, he was asked on cross-examination the following questions:

"Q. Do you remember of having a conversation with me on Friday morning while you were in the custody of the deputy sheriff in the hall downstairs; I came to you or your father and your father came with me, and I asked to talk to you, A. Yes, sir; I do. * * *

"Q. I will ask you if at that time I didn't ask you the question: 'Did Scotty kill that girl?' and if you didn't look me in the eye, if you didn't look me squarely in the eye, and say to me: 'Mr. Briggs, he couldn't possibly have done it?'

"Mr. Swindall: To which the state objects for the reason it is incompetent, irrelevant, and immaterial.

"The Court: Objections sustained. Exceptions noted. * * *

"Q. I will ask you in answer to my question at that time you did not say to me: 'They are trying to make me swear Scotty shot that girl?"

"Mr. Swindall: To which the state objects for the reason that it is incompetent, irrelevant, and immaterial.

"The Court. The objections of the state to that are sustained."

The defendant contended that the witness Ring had made contradictory statements at the coroner's inquest and was here seeking to show that he also made statements at other places at variance with his testimony at the preliminary and at the final trial. The question was material. It was admissible as affecting his credibility. The proof of contradictory or inconsistent statements is one of the recognized methods of impeaching a witness. Before the impeaching evidence is admissible, a predicate or foundation must be laid by calling the attention of the witness to the time, place, person, and circumstances of the supposed contradictory statement, so the witness will not be entrapped and may deny or explain it. The question clearly sought to lay a predicate or foundation and the exclusion of the evidence offered was erroneous. Smith v. State, 3 Okla. Cr. 629, 108 P. 418; Gibbons v. Ter., 5 Okla. Cr. 212, 115 P. 130; Hartwell v. State, 15 Okla. Cr. 416, 177 P. 383; Jones on Evidence, par. 845.

Upon the third assignment, i. e., the admission of incompetent evidence prejudicial to defendant, it appears that, as before stated, the defendant on the occasion had arranged to meet another woman. The other woman was married but at the time separated from her husband. It is contended that this was prejudicial to defendant. It was, no doubt, prejudicial, but was admissible as explaining the presence of defendant at the scene of the occurrence and as explaining the appearance of the witness Williams and his relation to the defendant and his interest in the case, but beyond that it was not relevant. The trial court

permitted development of this matter further than the importance of the evidence warranted, and it may have had the effect of inflaming or prejudicing the minds of the jury against the defendant.

The fourth assignment, i. e., the giving of the court's charge on circumstantial evidence, is, we think, not tenable. The charge on circumstantial evidence was not necessary in this case; it not being a case depending wholy on circumstances. Yet it was not error to do so. The instruction given is not specific in all its parts, but it is not prejudicial. It is the safest practice for trial courts to follow the approved instructions. Carter v. State, 6 Okla. Cr. 232, 118 P. 264; Baldwin v. State, 11 Okla. Cr. 228, 144 P. 634.

For the reasons stated, the case is reversed.

BESSEY, P. J., and DOYLE, J., concur