## ORVILLE LITTLE v. STATE.

No. A-9827. July 2, 1941.

(115 P. 2d 266.)

274

Reuel W. Little and Jack H. Smith, both of Madill, for plaintiff in error,

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Orville Little, was charged by indictment presented and filed by a grand jury of Carter county with the offense of rape in the first degree, was tried, convicted of the offense of assault with intent to commit rape, and sentenced to serve a term of five years in the State Penitentiary, and has appealed to this court.

Three assignments of error are presented by the defendant:

(1) The evidence is insufficient to sustain a conviction.

(2) Throughout the proceedings the court conducted himself in a partisan manner and conveyed to the jury the thought that the defendant, in the opinion of the court, was guilty and should be convicted.

(3) The court erred in excluding from the consideration of the jury a written statement made by the prosecuting witness.

The first assignment of error is without merit. There is a conflict of evidence which raised an issue of fact for the determination of the jury. Under the testimony of the prosecuting witness, the evidence was sufficient to sustain the charge of rape in the first degree. Some of

her statements were highly improbable, but if believed by the jury were sufficient to sustain the conviction.

The third assignment of error concerns a written statement executed by the prosecuting witness, Mae Stowers, on the 30th day of January, 1939, as follows:

"I, Mae Stowers, of lawful age, and first being duly sworn deposes and says: That I do not want to prosecute Arvil Little for the charges which I had filed against him in form of a complaint. I feel that it is as much my fault as it was his and I desire to drop all charges against him. I did not have any right to make a complaint against him in the first place, and ask that you dismiss the case against him.

"I give this statement of my own free will and accord, and this is my own voluntary act.

"Witness my hand this 30th day of January, 1939.

"(Signed) Mae Stowers.
"Witnesses:
"(Signed) Robert Clark
"(Signed) A. J. Jarmon
"(Signed) A. E. Mundy."

During the course of the cross-examination of the prosecuting witness this instrument was handed to the witness for examination, and she testified that she had signed it. Counsel for the defendant then offered the instrument in evidence, and an objection by the county attorney was sustained. The defendant then offered each separate thought or part of said statement, and an objection was sustained. Counsel for defendant, out of the presence of the jury, offered to prove by the prosecuting witness that the instrument was executed freely and voluntarily by the prosecuting witness in the presence of her husband, and in the presence of her uncle, A. J. Jarmon, and in the presence of S. P. Faulk, D. L. Faulk, and A. E. Mundy.

Upon objection being made by the state to this offer, the court sustained the objection for the reason as stated by the court:

"This witness is not authorized to determine when the prosecution can be instituted or maintained and is without authority to determine when a prosecution should be conducted or dismissed."

Counsel for defendant excepted in each instance to the action of the court in sustaining objections by the state to the questions and offers made by the defendant.

In determining the question as to whether the action of the trial court materially prejudiced the defendant, it is necessary to consider the evidence of both the state and the defendant.

There is a decided conflict in the testimony. The prosecuting witness was a married woman, 24 years of age. She testified that she was on the streets of Madill, about 8 p. m., with two of her girl cousins with her. That the defendant drove up to the curb and asked her to ride to the drugstore with him and have a Coca Cola; that she got into the car with him, and defendant drove on out of town. While on the way, he slowed down and picked up one Boyd Raburn; that they drove to Ardmore. The defendant and Raburn were drinking alcohol or whisky, and bought a chaser for the drinks. That they drove out to the Shamrock Tavern about 9:30 or 10 o'clock. The boys ordered whisky. She did not drink any whisky or beer. About 1 o'clock they started to leave; and after she got into the car, the defendant claimed something was wrong with the gear shift. The defendant left presumably to call about the car. When he returned he dragged her out of the car and into a cotton patch; and both the defendant and Raburn there raped her. That one held her while the other raped her; and when the first had finished the act, he held the prosecutrix while

the other man raped her. That she hollered and resisted to her utmost; ran back to the Shamrock as quickly as she could get loose, and told them what had happened. That her face was bleeding and her knees were skinned. That the people at the Shamrock notified the policeman; that she was taken to the police station, and later to her father's home at Madill.

The proprietor of the Shamrock testified that about 2 o'clock a. m., the prosecutrix came into his place in a nervous condition; her hair was rumpled, her clothes were wrinkled, and she asked for the officers, and said the boys had mistreated her.

The witness testified that he later went to the place where she had said the attack occurred and found two rubbers on the ground. Other witnesses identified the condition of the prosecutrix after the alleged attack, which corroborated the story of the prosecutrix as to her physical appearance.

Both of the girl cousins who were with the prosecutrix at the time she met the defendant testified on behalf of the defendant. Their testimony in substance was that they were crossing a street in Madill when they saw the defendant, who had his car parked in the street at the side of the curb. That the prosecutrix whistled at the defendant and went over to the car where he was parked. There were two boys in the car. Later the prosecutrix called the two cousins over to the automobile and introduced them to the defendant and the other boy who was there with him. That the prosecutrix did not know the defendant's name, but had to ask him his name after the girls walked up so that she could make the introduction. That the prosecutrix asked the two girls to go with them to Ardmore, but that they refused to do so; and then the prosecutrix went off in the automobile with the defend-

ant and the other man, and that she was sitting between them in a single, seated car. That they saw the prosecutrix the next morning, but there was no indication of blood or torn clothes at that time.

The defendant testified that he was 28 years of age and had been married; that the first time he saw the prosecutrix was in front of the Corner Drug Store in Madill; that the prosecutrix came out to the car and asked him if he would take her over to a dance in Ardmore; that he said he would; that she called her two cousins out and introduced them to him and Boyd Raburn who was with him in the car; that the prosecutrix did not object in any way to anything on the way to Ardmore; that when he got to Ardmore he went inside to a bar and got a coke, staying about 10 or 15 minutes, during which time the prosecutrix was left alone in the car. That he and the prosecutrix went to the Shamrock, and each drank three or four rounds of beer and danced several times; that defendant propositioned prosecutrix to come with him and have a little fun; she replied that she did not believe she wanted to; that later they went outside and she stated: "Get that blanket there"; that they went out and sat down on the spread blanket. Prosecutrix asked if he had any protection, and he replied, "Yes." That they discussed about her husband being in jail, and she said she had a note which was coming due, and she needed money to pay it off; that he put on some protection and started to get on the prosecutrix when Boyd Raburn walked up; that both the defendant and prosecutrix thought it was the police or something, and jumped up; that he saw who it was and grabbed hold of her to keep her from running; and when she jerked loose, she fell in the gravel; that prosecutrix then ran inside the tavern; that he later followed her into the tavern and tried to

get her to go back with him, and she refused; that he did not have intercourse with her.

On cross-examination the defendant admitted leaving after the incident occurred and going to California. He further admitted serving a year in the penitentiary on a rape charge.

Counsel for defendant further introduced excerpts from a transcript of evidence taken at a former trial, which showed conflicting statements made at that trial by the prosecutrix from those given by her in the instant trial.

In Douglas v. State, 19 Okla. Cr. 257, 199 P. 927, this court held:

"In a prosecution for rape, the credibility of the prosecutrix may be impeached by proof that she has made statements relevant to the issues, out of court, contrary to what she has testified to on the trial.

"Where a witness has made statements in writing, different from those made on the trial, and the statements are shown the witness, who admits having made them, and witness is given an opportunity to explain them, they may be read in evidence for the purpose of impeachment."

In the body of the opinion it is stated:

"We also think that the court erred in refusing to admit in evidence the affidavit made by the prosecutrix in the office of the county attorney. The affidavit was offered by the defendant to discredit the witness, and, being proper for such purpose, it should have been admitted. The court also erred in refusing to admit in evidence the letters written by the prosecutrix to the defendant and his wife. The general rule is that, where a witness had made statements in writing different from those made on the trial, and the statements are shown the witness, who admits having made them, they may be read in evidence for the purpose of impeachment. The credibility of the prosecutrix may be impeached by proof

280

that she has made statements relevant to the issues out of court, contrary to what she has testified to on the trial, and the court erred in rejecting the offered evidence as to what the prosecutrix stated to Dr. Tarleton. 1 Greenleaf Ev. (16th Ed.) par. 461."

See, also; Thomas v. State, 34 Okla. Cr. 63, 244 P. 1116; Wheat v. State, 38 Okla. Cr. 119, 259 P. 279; Morris v. State, 30 Okla. Cr. 382, 236 P. 443; Ferbrache v. State, 21 Okla. Cr. 256, 205 P. 617.

The statement by the trial court that the prosecutrix is not authorized to determine when a case should be dismissed and a prosecution instituted is correct; but that part of her statement in which she says that she was as much to blame as the defendant is contrary to her testimony and corroborates the story related by the defendant about this incident.

The general rule is that upon the laying of proper predicate, it may be shown that a witness has made statements upon material matters different from his testimony for the purpose of affecting the credibility of such witness. In the recent case of Self v. State, 62 Okla. Cr. 208, 70 P. 2d 1083, it is stated:

"In prosecution for * * * rape, the credibility of the prosecutrix may be impeached by proof that she made statements relative to the issues contrary to what she has testified to on the trial."

We think, under the facts in this case, where the prosecutrix admits that she had never met the defendant prior to the night in which the alleged attack occurred, and the fact that she was a married woman and went with him to a neighboring town; and, under her own testimony, defendant was drinking intoxicants and she danced with him until the early hours of the morning; that her written statement that the incident which occurred was as much her fault as the defendant's would

certainly be entitled to consideration by the jury. The jury might reasonably have concluded that her conduct was such as to invite the solicitations made by the defendant, and that the events occurred in substantially the manner as testified by the defendant. The prosecuting witness had several opportunities when she was not in the company of the defendant to have left him prior to the time of the alleged attack, if for any reason she did not like the drinking, which she says the defendant was doing, or the attentions he was paying to her. We think, under the record, this statement should have been admitted for whatever weight the jury might have seen fit to have given it.

With this conclusion established, it becomes unnecessary to consider the other assignment of error. However, if this case is retried, it would be well for the trial judge to leave the interrogation of the witnesses to the prosecuting attorney who seemed very able to conduct the prosecution. We are not stating, however, that the actions of the trial court in this regard were prejudicial.

It is the duty of the trial courts to refrain from in any manner, either through their actions or words, to indicate to the jury their opinion upon the merits of the case being tried before them. For that reason, except when it appears absolutely necessary to the administration of justice, the trial judge should not interrogate witnesses. Generally, the trial court will be motivated only by a spirit of fairness when he proceeds to ask questions of a witness, but often a lay jury is apt to confuse the actions of the court and become impressed that the court has an opinion upon the merits of the case, which he is trying to convey to the jury.

It is a fundamental principle of our law that the jurors are the judges of the credibility of the witnesses,

282

and the weight to be given to their testimony; and for that reason the trial courts cannot be too careful and guarded in their efforts to avoid allowing the jurors to discover the opinion of the judge as to the weight of the evidence and credibility of the witnesses.

For the reasons hereinabove given, the judgment of the district court of Carter county is reversed and said cause is remanded for a new trial.

BAREFOOT, P. J., concurs. DOYLE, J., absent.