ANDREW McDONALD v. STATE.

No. A-9080. April 30, 1937.
(67 Pac. [2d] 806.)

288

E. O. Clark, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Wm. S. Hall, Jr., Co. Atty., for the State.

BAREFOOT, J. The defendant was charged, by information, with the crime of assault with intent to rape, and was convicted and sentenced to serve a term of one year and one day in the penitentiary.

It is contended by the defendant that the evidence is insufficient to warrant a conviction, and we think this is the only error that need be considered.

The record reveals that defendant was 72 years of age; that he was charged with assault with intent to commit rape on a small girl 14 years of age. He came to the home of the prosecutrix during the month of April, 1935; he lived with the family on the farm and, by reason of the blindness of the father, he did most of the work toward raising a crop that year. He was treated as one of the family and remained at home with the children when the mother and father were away. The mother testified that he had always, prior to the time this charge was brought against him, conducted himself in a proper way, and she had the utmost confidence in him. On Sunday, August 4, 1935, the mother and father accompanied

one of their children and his wife to visit another child at Eufaula, leaving the defendant, a son who was old enough to be selected for service in the CCC camp, the prosecutrix, age 14 years, and her sister Betty Jane, age 7 years, at home. It is claimed that the assault was committed on Sunday, August 4th. On this night the son Tommy had gone to church, but returned later in the night. The prosecutrix and her sister had gone to bed in the same bed, and, as she states, she had been asleep when she was awakened and saw the defendant, and he had his hands on her and asked her to come to his bed, "and let him do that to her." She refused, and she says he tried to get on her, but did not do so. At the preliminary trial she did not testify to this. Her testimony in reference to details was quite contradictory and conflicting. During the time that all of this was happening, her sister Betty Jane was asleep in the same bed with her and at no time was awakened. She made no outcry sufficient to awaken her sister. She did not tell her brother upon his return what had happened, nor did she tell him the next morning. She did not tell her mother when she returned from Eufaula on the following Wednesday. The first person she told was her sister-in-law, between the following Wednesday and Saturday. She also claims to have told one of the neighbor girls some time later. Her 11-year-old sister, Christine, whom she said had heard and saw the defendant make indecent remarks to her at one time, was not placed on the witness stand. The mother did not hear about it until told by her son after his return from visiting the sister-in-law in Eufaula. She at this time confronted the defendant and he immediately denied it. The only attempt to corroborate the testimony of the prosecutrix was the evidence of two small neighbor girls, ages 14 and 10. The girl 14 testified to the defend-

ant having upon one occasion, about three or four months prior to the time he was charged in the information, and on Decoration Day, with having put his arms around her and on her breast. This happened at the home of the prosecuting witness, where he was staying, and at a time when five little girls were in the same room and her mother and the mother of the prosecutrix were in an adjoining room. She at no time mentioned to her mother or the mother of the prosecutrix what the defendant had done to her. The other little girl, age 10, testified that later the same day the defendant offered her and the prosecutrix a nickle if they would pull up their dresses and show it to him. This happened in the berry patch where they were picking berries. They refused, and left the defendant, and came back to the house, but did not at any time mention to anyone what had happened.

The defendant, testifying in his own behalf, denied all of the statements made by the prosecutrix and the neighbor girls. He claimed that he came to work for the father of the prosecutrix, who was nearly blind, in April; that he put in a crop and worked the same; that the high waters washed almost all of it away; that in September he was getting ready to leave and go back to Arkansas to live with some relatives; that he informed Mr. and Mrs. Stafford that he was going to leave and asked them to pay him the balance owing him for the work that he had done; that they told him they did not have any money; and soon after that this charge was filed against him; the complaint being filed on the 15th day of August, 1935.

Prior to his coming to work at the home of Mr. Stafford, the defendant had lived in Arkansas, Oklahoma, and California. He produced witnesses who had known him at these different places and they all testified to his good character and reputation. The evidence showed he at-

tended church and often accompanied the prosecutrix and her sisters to church. The mother of prosecutrix testified to his good reputation and character prior to this charge, and said that the family had the utmost confidence in him. It is almost inconceivable that an old man 72 years of age would attempt to harm a small child with whom he had been associated as the record in this case shows. He tells of many times when he had corrected her, and the other girls who testified against him, for using language that they should not use. The record shows that he had always treated them as one of his own children.

It has been the general policy of this court not to set aside the verdict of the jury where there is any evidence to sustain it, but, in cases of this character, it is the policy, not only of this court, but of all courts, to weigh carefully the evidence that an injustice may not be done those charged with an offense such as this. As has often been quoted by the courts, Lord Hale says: "It must be remembered that this is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though ever so innocent." Lawyers who have had long experience in the trial of cases in the courthouse know how true this statement is.

Judge Doyle, speaking for this court, in the case of Morris v. State, 9 Okla. Cr. 241, 252, 131 Pac. 731, 735, has laid down the rule which has been followed in many cases decided by this court.

"Finally it is contended that the evidence is insufficient to justify or sustain the verdict in that there is no corroborating evidence nor a single corroborating circumstance tending to connect the defendant with the commission of the crime. This court does not hold with some that, as a matter of law, rape cannot be established by the uncorroborated testimony of the prosecutrix, but in

common with all courts recognizes that, without such corroboration, her testimony must be clear and convincing. And, where the testimony of the prosecutrix bears upon its face inherent evidence of improbability, there should be corroboration by other evidence, connecting the defendant with the commission of the crime. The law is that the life or liberty of a citizen shall be taken only in case the right to do so is established beyond all reasonable doubt; and while there is no rule of law which forbids a jury to convict of rape on the uncorroborated testimony of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony, yet the courts have always recognized the danger of conviction on her uncorroborated testimony, and the testimony of the prosecutrix, if inherently improbable and uncorroborated, will not justify or support a conviction; as the only reasonable conclusion in such cases is that such verdicts are the result of passion or prejudice, and therefore contrary to law. The testimony of the prosecutrix that the encestuous relations continued for nearly five years without being detected or discovered by her grandmother or her sister, one or both being present in the room at all times, is incredible. The evidence shows an intense enmity existing for many years between her father and her mother, and it is significant that she had been with her mother more than a month before she changed her former statements by making this unsupported charge against her father. And there is no claim of threats or fear in explanation of her delay in making this statement. The opportunity was ample, and it seems far more probable that some of the young men that the evidence shows frequented her home was the father of her child; and when we consider the testimony of the prosecutrix as a whole with its contradictions and inconsistencies, and that the facts and circumstances in evidence all tend to discredit her, and consider that the evidence of the defendant's character for virtue and morality, and that he constantly during these years attended church and Sunday school with his two daughters, is uncontradicted, we cannot help but think that the testimony of

the prosecutrix was maliciously inspired and that the verdict was more the result of prejudice or public sentiment than the calm and dispassionate conclusion of the jury upon the facts in evidence." See, also, Ferbrache v. State, 21 Okla. Cr. 256, 206 Pac. 617; Allen v. State, 10 Okla. Cr. 55, 134 Pac. 91; Palmer v. State, 7 Okla. Cr. 557, 124 Pac. 928; Douglas v. State, 19 Okla. Cr. 257, 199 Pac. 927; Dawes v. State, 34 Okla. Cr. 225, 246 Pac. 482.

We have read and reread this record and have come to the conclusion that the defendant should not be sent to the penitentiary upon the evidence introduced in this case. The evidence of the prosecuting witness is not only conflicting and contradictory, but it is entirely uncorroborated as to the important event in this charge. The first person whom she told was her sister-in-law, quite some time afterwards, and the record reveals that this was not done until her sister-in-law made suggestions to her such as: "Say, Cricket, has that old man ever played around you?", and "I'll bet he would do anything to you." Then it was she told her. She afterwards claimed to have told one of the neighbor girls, and when asked how she told her, she used the exact language she claimed her sister-in-law had used by saying: "I bet that old man would do anything to you." This was a very close case, and during the trial, and while the defendant was on the witness stand, and after the county attorney had completed his cross-examination, the court took up the examination of the defendant and asked him a number of questions. While we think the court has a right to examine the defendant, yet in a case of this nature it is very easy for the jury to come to the conclusion that the court thinks the defendant guilty, and therefore the court should be very careful to not so express himself in the presence of the jury in any way that would give them an opportunity to believe he was interested in either a conviction or ac-

quittal. The record in this case shows that the trial court was very careful of the rights of the defendant and his instructions showed careful preparation, and fully protected the rights of the defendant.

The defendant was an old man 72 years of age. He had always treated the children, including the prosecutrix, in a kindly, fatherly manner, as testified to by the mother of the prosecutrix. He had corrected them when he thought proper. He had attended Sunday school and church with them, and the evidence shows that he had a splendid character and reputation in all the different communities in which he had lived. This charge had not been made against him until he was about to leave and go back to his old home in Arkansas to reside with his near relatives for the balance of his days, and after he had requested that he be paid a small sum for his services through the summer months.

We are aware of the horror and detestation with which all good men look upon the crime of rape, and especially an assault upon a girl of 14 years of age, and we think this had more to do with the conviction of defendant than the testimony in the record.

For the reasons above indicated, we are of the opinion that the judgment and sentence imposed in this case should be reversed, and it is so ordered.

DAVENPORT, P. J., and DOYLE, J., concur.