WILLIAM HULSEY v. STATE.

No. A-9499. March 3, 1939.
(87 P. 2d 1110.)

Truman Harrison and Hal Welch, both of Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and W. V. Stanfield, Co. Atty., of Ada, for the State.

BAREFOOT, J. The defendant, William Hulsey, was convicted in the district court of Pontotoc county of the crime of rape in the first degree, and was sentenced by the court to serve a term of 20 years in the penitentiary, and has appealed.

The first assignment of error is that the evidence is insufficient to sustain the verdict.

The record reveals that defendant is a seven-eighths blood Chickasaw Indian, 20 years of age. He was convicted of statutory rape upon his cousin, Martha Jean Colbert, age 9. That on Sunday, July 4, 1937, defendant came to the home of Waldron Colbert, the father-in-law of the mother of prosecutrix, and stayed there that day. That between sundown and dark defendant and prosecutrix, and defendant's six-year-old sister, Geraldine Hulsey, and William Williams, a boy about 12 years of age, left in defendant's automobile to go to a picnic at Birds Mill. They returned to the Waldron Colbert home in the early part of the night.

Prosecutrix testified that she was 9 years of age; that she had attended school, and was in the fourth grade; that on the evening of July 4, 1937, she went to a picnic at Birds Mill with defendant, his sister, Geraldine Hulsey, and William Williams; that on the way there defendant stopped his car and she and defendant got out; that defendant told her he was going to White's store to get some gas. She accompanied him. When they had passed over a hill defendant placed a handkerchief over her mouth; that she tried to hollo but could not; that he took her through a wire fence; that she cried and holloed and

tried to get him to take her back to the car; that he pulled off her pants and had intercourse with her; that defendant told her he would kill her if she told her mother. They afterwards went on to the picnic and stayed there for several hours and then returned home; that she did not tell her mother that night because she was afraid. The following day defendant took her mother and her home. Afterwards she wrote a note to her mother telling her what had happened. Her mother took her to the office of the county attorney and a warrant was sworn out for the arrest of defendant.

The county attorney had prosecutrix examined by Dr. Catherine Brydia and Dr. Ernest A. Canada, who was county physician. Dr. Brydia testified they made an examination of prosecutrix, and also made a microscopic examination of her, and had a slide run at the hospital, and found "intracellular and extracellular diplo cocci," which in English means she had "gonorrhea." This examination was made on the 8th day of July, 1937. She found her to be sore and swollen. Dr. Brydia was also recalled and testified that she had examined prosecutrix during the trial, on the 18th day of October, 1937, and that the hymen had been broken, and that parts of it could be observed by a minute examination. She was corroborated in this statement by Dr. Parsons. This evidence was admitted in rebuttal after Dr. Welborn had testified for defendant that he examined prosecutrix about August 23, 1937, after she returned from the hospital at Fort Sill, and that in his opinion she was a person who did not have a hymen, and that from his examination he could not find anything to show she ever had one.

Dr. Parsons, who was connected with the United States government at the Comanche and Kiowa Indian Hospital at Fort Sill, testified that prosecutrix was admitted to that hospital, and that he had made an examination of her on the 12th day of July, 1937. His report

was read and introduced in evidence. It was a complete physical examination. This examination showed a rupture of the hymen, lacerations between the minor and major labiae on each side. He testified she had "gonorrhea."

Dr. Canada, county physician of Pontotoc county, testified that he examined defendant on the 8th day of July, 1937. That he examined one discharge himself and sent another slide to the bacteriologist at the Ada Hospital. From these examinations he testified as follows: "From my examination, and from the slides I concluded that the man had gonorrhea." He also testified on cross-examination that it had been running for several weeks.

Defendant, testifying in his own behalf, admitted being at the home of the mother of prosecutrix on July 4, 1937, and going to the picnic at Birds Mill. He testified that the gas line on his car was stopped up and he got out of the car to fix it but that the other children remained in the car. That he at no time had intercourse with the prosecutrix, and did not harm her in any way. He further testified that Mack Colbert, the father of prosecutrix, who was in jail, had asked him to watch his wife, Della Colbert, and that he had reported to Mack that he had seen his wife and a man in a room and that the man had his arms around her, and a bottle of liquor was on the table, and for this reason she was mad at him and had instituted this prosecution for this reason.

Defendant also offered Dr. O. E. Welborn, who testified that he examined defendant about six weeks before the trial, which was started on the 18th day of October, 1937, and he did not have gonorrhea at that time. That he examined prosecutrix after her return from the Fort Sill Indian Hospital about August 23d, and did not find her to be suffering from gonorrhea. That in his opinion she did not have a hymen, and that only about 50 per cent of women have hymens.

Marie Williams also testified for defendant. She was 12 years of age, and had lived with her mother near the home of prosecutrix for two years. That she had stayed all night with the prosecutrix in June, July and August, 1936. That on one of these occasions they were playing over the hill near the Colbert home and she saw two 12-year-old boys get on prosecutrix at different times and stay there for five minutes. This evidence was permitted to be introduced by the court because the state had showed that the prosecutrix had contracted a venereal disease and for no other purpose.

Dr. Joseph G. Breco also testified for defendant that he had examined him two weeks prior to trial and did not find him suffering from gonorrhea, but on cross-examination testified that he could have had it in July, 1937, and been well when he examined him.

Neither the state nor defendant placed Geraldine Hulsey, age six, sister of defendant, and William Williams, age 12, the other two parties who went with defendant and prosecutrix in the car to the picnic, upon the stand, and they did not testify in the case.

Defendant, in his brief states:

"The testimony of the state in this case is based wholly on the uncorroborated testimony of a 9-year-old girl. The testimony is incredible and unreasonable."

In justification of this statement the following cases, decided by this court, are cited: Self v. State, 62 Okla. Cr. 208, 70 P. 2d 1083; Cape v. State, 61 Okla. Cr. 173, 66 P. 2d 959; Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530; also, State v. Goodale, 210 Mo. 275, 109 S. W. 9.

These cases and others from this state announce the rule that a conviction for statutory rape may be had on the uncorroborated testimony of the prosecutrix; but that her testimony must not be contradictory, inconsistent and unreasonable, and bear upon its face inherent evidence of

improbability. McDonald v. State, 61 Okla. Cr. 287, 67 P. 2d 806; McLaurin v. State, 34 Okla. Cr. 324, 246 P. 669; Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Reeves v. Territory, 2 Okla. Cr. 351, 101 P. 1039.

A reading of the facts in the cases above cited and others from this state will reveal that where cases were reversed for this reason, the facts of the particular case bore out the reasons above stated. This is not true in the instant case. Here the prosecutrix was corroborated in many details. The testimony of the physicians who examined her, and testified to her physical condition corroborate her testimony. The evidence that prosecutrix was suffering from a venereal disease, and the defendant was also afflicted with the same disease, and that from an examination of him it had been running for several weeks, was strong corroborative evidence. The testimony of defendant corroborates her in every detail, except that he denies he wronged her in any way. She related the same evidence upon her direct examination as she did upon her cross-examination. There was at no time any contradiction in her testimony, nor was it unreasonable. There may have been some circumstances which might have caused one to believe that there may not have been much resistance on her part, but she being only of the age of 9 years, under the law it made no difference whether the act was accomplished with or without her consent. Oklahoma Statutes 1931, section 2518, Oklahoma Statutes Annotated, title 21, § 1114.

It is next contended that a reversal of this case should be had by reason of certain remarks made by the county attorney in his closing argument. The closing argument made by the county attorney is given in the case-made. We have carefully read the same, and it is not necessary to extend this opinion by referring to the different statements. The argument was a clear, concise analysis of the case from the state's standpoint, and we do not think any

statement was made that would justify a reversal of this case. There was only one statement to which reference may be made. The mother of prosecutrix had testified that when her daughter told her what had happened to her she wrote a note. This original note was not offered in evidence, but while prosecutrix was on the witness stand, the attorney for defendant had her write before the jury exactly what the note contained. It was "Mother, Bill did something bad to me. Your little girl. (Signed) Martha Jean Colbert." Counsel for defendant, in his argument, had asked the question, "Where is the original note?" The county attorney, in reply to this question, said that he had the original note in his possession. We do not think the county attorney should have made this statement when the note had not been introduced in evidence by him. But under the circumstances as above stated, we do not think this was prejudicial error sufficient to reverse this case. The defendant's attorney, on cross-examination, had her write what the note contained.

Defendant further contends he was not permitted by the court to cross-examine the mother of prosecutrix with reference to her attitude toward defendant by reason of conversations which he claimed he had with her husband. She was permitted to say: "A. Oh, sure I do feel a little bit hard at him, and I believe he has had enough experience now to not do nothing like that again." We do not think the court erred in refusing to admit the evidence offered, and to which an exception was taken.

Defendant excepted to the giving of instruction No. 10 by the court. We do not consider it necessary to quote this instruction in full. It has reference to the statement made by the prosecutrix to her mother, and told the jury if it was made within a reasonable time, and they so found beyond a reasonable doubt, they might consider the same, but if they did not find beyond a reasonable doubt that the complaint was made within a reasonable time, they would

wholly disregard the same. Complaint is made of that part of the instruction which says, "That is, that if the complaint was made by the said Martha Jean Colbert within a reasonable time after the alleged occurrence of rape, may, if believed by you, be sufficient corroborative evidence," on the ground that it is a comment on the weight of the testimony. We do not consider there was any error in this instruction as a whole. In fact, it was not necessary to give this instruction at all, and when read as a whole, it was more favorable to defendant than it was against him. All of the instructions were very favorable to defendant.

In connection with defendant's contention that the evidence was insufficient, counsel calls attention to a statement shown in the record to have been made by the trial judge at the time the motion for new trial was overruled. This statement was as follows:

"Cases of this kind are always doubtful and difficult to decide. This is a very weak case and I do not know about it. I am not thoroughly satisfied as to his guilt. I am unable to say as to the guilt or innocence of this defendant, but since the jury has passed upon the testimony and found him guilty, I will not disturb their verdict."

The record does not show any exception to the above statement. What the court probably meant by this statement was that cases of this character were as Lord Hale said: "It must be remembered that this is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though ever so innocent." But the jury having passed upon the facts, heard the witnesses testify, and seen their demeanor upon the witness stand, he was unwilling to disturb their verdict. The statement that "I am not thoroughly satisfied as to his guilt," if taken literally, might have been sufficient for him to sustain the motion for a new trial, but from all the facts in this case, we can hardly realize that he

would have been justified in so doing. Under the circumstances, we are of the opinion that justice will be best served by reducing the sentence of this defendant in this case to 15 years in the penitentiary, the minimum punishment allowed under the statute for statutory rape of a person under 14 years of age. Oklahoma Statutes, 1931, sec. 2518, Oklahoma Statutes Annotated, title 21, § 1114.

It is within the power of the Governor of the state to at any time lower this sentence if he deems it advisable, by the exercise of the right of parole or pardon.

It is, therefore, ordered that the judgment of the district court of Pontotoc county be modified to a term of 15 years, and as so modified is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.