**John Cole HOLDING, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–76–930.**

Court of Criminal Appeals of Oklahoma.

Aug. 23, 1977.

John T. Elliott, Public Defender, Frank Muret, Asst. Public Defender, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

### PER CURIAM:

The appellant, John Cole Holding, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, with the offense of Rape in the First Degree, in violation of 21 O.S.1971, § 1111. Upon a plea of guilty, the defendant was convicted by a jury and received a sentence of fifteen (15) years in the State Penitentiary. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, the State's first witness, Trina Vetter stated that on January 20, 1976, she resided with her room-mate, Terry Kilcrease, at 1282 S.W. 74th, Apartment 215, Oklahoma City, Oklahoma. She testified that on that date she and her roommate were alone in the apartment when there was a knock at the door. Kilcrease answered and greeted a man who asked to use their phone. Kilcrease let the visitor enter the apartment, and shortly thereafter the defendant, who was accompanying the first visitor, entered the apartment. Subsequently the witness entered the living room and observed the two visitors seated in the living room. She sat herself on the floor across the room from where the defendant was seated. The defendant had a glass of water and they were engaged in a conversation. The witness testified that the defendant kept staring at her until she became uneasy and retired back to her bedroom. After being in the bedroom for a short time, the witness discovered the defendant at the door of her bedroom brandishing a knife. He told the witness, as he placed the knife to her throat, that if she made a noise he would kill her. The witness identified State's Ex. No. 1 as that knife. The defendant then ordered the witness to remove her clothes. The witness then described the details in which the defendant forced her to have sexual intercourse with him. She testified that during the act she screamed and noticed that several people came in and out of the bedroom door.

Subsequently, after the defendant and his companion had left the premises, two of her friends came to the apartment and transported the witness and her room-mate to the Police Department and then to the Hospital. While en route they spotted the defendant's companion hitchhiking. They stopped and detained him until his mother arrived on the scene.

The State's second witness, Doctor Shelba Bethel, an Obstetrician and a Gynecologist, testified that he examined the prosecutrix on the date in question. His examination revealed that the prosecutrix had hymenal lacerations that were bleeding at the time of the examination. The witness also testified that he discovered the presence of male sperm.

The next witness presented by the State, Terry Kilcrease, corroborated the earlier testimony of Trina as to the appearance of the defendant and his companion on the date in question and their presence in the apartment. She related that while the prosecutrix was in her bedroom, the defendant went into the kitchen and got a glass of water and then sat down. He then walked to the back of the apartment. After awhile, she heard the prosecutrix screaming and telling the defendant to leave, so she went back to the bedroom. She opened the door and observed the prosecutrix and the defendant on the bed unclothed, with the defendant positioned above the prosecutrix. The prosecutrix saw Terry and told her to call someone. The witness then went to use the phone, but while doing so the defend-

ant's companion took the receiver from her and hung up the phone. The two men left the apartment about five minutes later. The witness also testified that she accompanied the prosecutrix to the Police Station and to the hospital and corroborated the testimony referring to their observing the defendant's companion hitchhiking while en route.

Barbara Cox related that she is the prosecutrix's mother and was present when the prosecutrix was transported to the hospital where the examination took place on the above date.

Andrew Timmons of the Oklahoma City Police Department related details establishing the chain of custody of the specimens taken at the hospital.

The last witness offered by the State was W. G. Fansler, who testified to the technical investigation of certain items found at the scene of the incident. He related that he dusted the glass and the knife for fingerprints, but the investigation failed to produce any conclusive determinations.

The defendant took the stand and testified in his own behalf. He related that he and his companion, Mike Maldin, were together in the parking lot of the apartment complex above mentioned, shortly after midnight on the date in question. They had gone to the complex to visit a friend, whom they found not to be at home. While in the parking lot they observed a girl in a second story apartment window. The defendant's companion went up to the apartment and gained entrance. Shortly thereafter the defendant followed and also entered the apartment. After a short conversation with the two girls inside, the defendant testified that he went into the kitchen to get a drink of water. The defendant testified that he was invited to look around the apartment, which he did. When he got to the back bedroom he found the door ajar. He walked in and was met by the prosecutrix. The defendant related details that he and the prosecutrix had sexual intercourse and that she freely consented to the activity. He denied carrying a knife or that he forced the prosecutrix in anyway.

The defendant asserts three assignments of error. The first is that the evidence submitted by the State to prove that the defendant committed the act of first degree rape is so highly improbable that it is insufficient to sustain a conviction without evidence corroborating the prosecutrix's testimony. This Court has held that where the testimony of the prosecutrix is contradictory, uncertain, improbable, or impeached, it should be corroborated in order to warrant a conviction. *Howard v. State*, 79 Okl.Cr. 247, 153 P.2d 831 (1944). *DeWitt v. State*, 79 Okl.Cr. 136, 152 P.2d 284 (1944). *McDonald v. State*, 61 Okl.Cr. 287, 67 P.2d 806, *Williams v. State*, 61 Okl.Cr. 396, 68 P.2d 530 (1937). However, this Court has also often held that a conviction for Rape may be had on the uncorroborated testimony of the prosecutrix or slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of credence. *Duffey v. State*, Okl.Cr., 514 P.2d 421 (1973). *Holmes v. State*, Okl.Cr., 505 P.2d 189 (1972); *Bryant v. State*, Okl.Cr., 478 P.2d 907 (1970); *Gaines v. State,* Okl.Cr., 267 P.2d 612 (1954). However, this rule has been limited to the effect that the record of the case will be carefully examined to determine whether the evidence of the prosecutrix is clear and believable and is not inconsistent, incredible or contradictory. If the evidence is such that a jury would be justified in their conclusion, and if the verdict is based upon probable testimony, then this Court will recognize the exclusive province of the jury to weigh the evidence and determine the facts and will not interfere with the jury's verdict, though there may be a sharp conflict in the evidence. *Haga v. State*, Okl. Cr., 422 P.2d 221 (1966). The cases cited by the defendant to support his assertions suggest that the testimony of the prosecutrix must be highly improbable, uncertain or contradictory before this Court will interfere with the jury's findings. In *McDonald v. State*, supra, a seventy-two year old man was accused of assault with intent to rape a small girl of fourteen. The defendant had been staying at the prosecutrix's home to

help the family raise the crop over the summer months. The evidence showed that he attended church with the prosecutrix and her sisters and the mother testified that the defendant had always treated the children in a kind and fatherly manner. There was also evidence attesting to his excellent character and reputation. In *McDonald,* examining the abundance of evidence that was favorable to the defendant and after considering the age of the defendant, this Court reasoned that the testimony of the prosecutrix was so highly improbable that corroboration was required to sustain the conviction.

The defendant also relied on *Weston v. State,* 77 Okl.Cr. 51, 138 P.2d 553 (1943), wherein the prosecutrix did not complain of the attack until eight months after the alleged attack. The prosecutrix claimed that between twenty and thirty acts occurred in an open garage that was in plain sight of the passing public. There was evidence that the garage door was open at all times so that it would seem highly improbable that one one would have observed the alleged crimes at some point. Additionally, there was no testimony offered by the prosecutrix as to any particulars and there was no evidence showing penetration.

In *DeWitt v. State,* supra, the prosecutrix testified that her father came into her bed and had intercourse with her. The evidence indicated, however that the testimony of the prosecutrix was not believable without corroboration. There was evidence that a brother and sister were in the same bed as the prosecutrix at the time of the alleged act, that there were three children sleeping on a pallet next to the bed, and that an Aunt was sleeping in the same room. The prosecutrix testified that these acts continued over a period of two years, but none of the parties were awaken or knew anything about the attacks being made. Additionally, all the children testified that the father had never mistreated his children.

In *Howard v. State,* supra, the prosecutrix's testimony was full of contradiction and inconsistencies. For instance, the pajamas that were supposedly worn by the prosecutrix at the time of the attack were made of flimsy material but were not torn when shown to the jury, thus tending to refute her testimony that the defendant tugged at the pajamas in his attempt to remove them.

In each of these cases and in others cited by the defendant, the evidence revealed such a high probability that the defendant did not commit the alleged act that the Court found that it was justified to interfere with the jury's finding and reverse the conviction. After reviewing the evidence in this case, however, we must conclude that there is no such justification to interfere with the jury's verdict. The testimony in this case was not inconsistent, incredible, or contradictory. On the contrary, there was clear and convincing evidence from which a jury could reasonably conclude the defendant was guilty as charged.

This Court held in *Duffey v. State,* supra, where the facts are similar, that evidence including the prosecutrix's identification of the defendant as the person who entered her home, held a knife at her throat, stated that he wanted her money, tied and gagged her and then raped her was sufficient to sustain convictions for robbery with a dangerous weapon and rape in the first degree. Defendant's first assignment of error is without merit.

The defendant's second assignment of error is that the Court committed error in failing to instruct the jury upon corroboration of the prosecutrix's testimony. In view of our holding on the defendant's first assignment of error such an instruction was not required.

The final assignment of error that the defendant asserts is that the sentence is excessive. We have consistently held that the question of the excessiveness of punishment must be determined by an examination of all the facts and circumstances in each particular case and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive

as to shock the conscience of this Court. The sentence of fifteen (15) years is within the bounds prescribed by law and there was no indication in the record that the jury was unduly impassioned or prejudiced. *Wade v. State,* Okl.Cr., 556 P.2d 275 (1976); *Severs v. State,* Okl.Cr., 477 P.2d 695 (1970). We therefore conclude that there is no basis upon which the sentence should be modified.

For the above and foregoing reasons it is the opinion of this Court that the judgment and sentence should be, and is hereby, AFFIRMED.