Jim Ray **COOPER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–77–221.

Court of Criminal Appeals of Oklahoma.

Sept. 1, 1977.

John Huffer, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Harold T. Garvin, Jr., Asst. Atty. Gen., for appellee.

## OPINION

**PER CURIAM:**

Appellant, Jim Ray Cooper, hereinafter referred to as defendant, was charged in the District Court, Cleveland County, Case No. CRF–75–556, with the offense of Assault With Intent to Rape, in violation of 21 O.S.1971, § 681. The case was tried to the court, and a guilty verdict was returned. Punishment was assessed at one (1) year in the County jail, four (4) months of which were suspended. From judgment and sentence defendant has perfected an appeal to this Court.

The State's evidence, viewed in its most favorable light, established the following. On October 16, 1975, at about 7:00 p. m., Frieda Chambers went to the Westside Tavern in Norman for a beer. There she met defendant, whom she did not know. He bought her several beers. About 8:30 p. m. they left together but proceeded to different bars; defendant went to Bill and Dee's, and Frieda went to the Showtime. While at the Showtime she twice called Bill and Dee's in an effort to induce defendant to come to the Showtime. Eventually he did. They had another drink, and then she asked him to drive her home. He said he would take her home, and they walked to his car located at Main and Porter. He mentioned that he needed gas, and drove down Porter. When he got to Lindsey, he decided to go to Noble for gasoline, about five miles away. When he got to Noble and found no gasoline stations open, he turned around and headed back to Norman. Defendant turned east on Highway 9, the car stopped, and defendant stated, "it is out of gas," or words to that effect.

Ms. Chambers testified that defendant then "got romantic", and that he held something sharp to her side, which she eventually recognized as a knife. She stated that defendant "ordered" her to remove her clothes, but she refused whereupon he unzipped her pants, unzipped his own pants, and cut her underwear with the knife. She testified that defendant "just wouldn't let her out of the car." At one point she asked to get out to urinate, but defendant would not let her. As a consequence she urinated in her pants. Defendant demanded that she lie on the front seat with him, and when she tried to get up the defendant held her down.

After about two and a half hours, Ms. Chambers was able to get in the back seat and was considering escaping through a rear door but was dissuaded by defendant who ordered her to get into the front seat.

She complied and laid down with him. For several minutes he fondled her breasts, but stopped at her request. He fell asleep after a few more minutes, whereupon she took the knife from his opened right hand and stabbed him in the throat. Defendant awoke and lunged at her, grabbing the blade of the knife but not touching her. They tugged on the knife for a short time but she retained control. As she exited the vehicle she closed the blade of the knife and threw it as far as she could.

She ran away screaming and was eventually able to get a ride from a man. She did not tell him anything about the occurrence. He drove her to her home, where she smoked a cigarette, and then called the police. At the station she gave a written statement, and also surrendered her underwear to a policewoman. State's Exhibit No. 1, defendant's knife, and State's Exhibit No. 2, her underwear, were admitted into evidence. The knife was found near where defendant's car had been found by the police, after defendant and his car had been removed. Several photographs of defendant's car, exterior and interior views, were also introduced into evidence.

The evidence for the defense, taken in its most favorable light, indicated the following. Defendant met Ms. Chambers essentially as she stated. When they got to his car at Main and Porter, after leaving the Showtime, he stated that he needed gas. It was late, apparently 11:30 or 12:00 o'clock. None of the three stations on the corner of Main and Porter was open. Not knowing Norman very well, only having lived there for a month, the defendant drove south on Porter looking for a station. He got as far as Lindsey without finding any open stations, and having lived in Noble recently, he decided to drive there to an all night station. On arriving in Noble he discovered that it too was closed. He then returned by the same route (Highway 77), and turned right on Highway 9 (east), intending to turn north on 24th Avenue S.E. and cut over to Lindsey, where he knew of another station that might be open. However, before he could get to 24th Avenue S.E. he ran out of gas. Seeing the hopelessness of trying to find gas at such a late hour, he decided to sleep and advised Ms. Chambers to do the same. She, however, kept complaining and "going on" about getting gas. Eventually she got into the back seat, and defendant fell asleep; for how long he did not know. Subsequently he was awakened when Ms. Chambers re-entered the front seat. She complained some more, and he told her "shut up, there isn't anything we can do." The defendant went to sleep again only to be awakened when Ms. Chambers "hit" him and fled the car. He reached up and closed the door, and then went back to sleep, apparently not realizing that she had stabbed him twice in the throat. Eventually the police and ambulance awakened him. He remembered little after this until the following day when he awoke in a hospital.

Defendant testified that he never touched or assaulted Ms. Chambers in any manner and that he had no idea why she would stab him. He stated that earlier in the day he had purchased some oil and used State's Exhibit No. 1, admittedly his own knife, to open one of the cans. The open knife was then tossed in a plastic tray positioned on the transmission hump by the front seat. Defendant pointed out the plastic tray and several cans of oil which were clearly visible in the photograph of the interior of his automobile.

Defendant's wife testified that when she attempted to obtain defendant's car from the police department impoundment lot she first had to obtain fuel, because it was out of gasoline.

Defendant's first assignment of error is that the testimony of the complainant, Frieda Chambers, is so unreliable, unreasonable and contradictory that it requires corroboration, and that since there was no corroboration the evidence is insufficient to convict defendant for the crime charged. In *Cape v. State*, 61 Okl.Cr. 173, 66 P.2d 959 (1937), this Court stated:

"This Court does not hold with some that, as a matter of law, rape or assault with intent to rape cannot be established by

the uncorroborated testimony of the prosecutrix, but in common with all courts recognizes that, without such corroboration, her testimony must be clear and convincing; . . . " (Citations omitted)

Further, Syllabus No. 5 states:

"Under the laws of this state, conviction of assault with intent to commit rape may be had on the uncorroborated testimony of the prosecutrix; but where her testimony is contradictory, inconsistent, and unreasonable, and the defendant testifies and denies specifically the testimony of the prosecutrix, and his testimony is corroborated, the testimony of the prosecutrix, standing alone, is not sufficient to warrant a conviction."

To like effect is *Reddell v. State*, Okl.Cr., 543 P.2d 574 (1975).

 We are of the opinion that the testimony of Ms. Chambers was such that it required corroboration. Thus, we consider the question of whether or not there was any corroboration.

In *Cape v. State*, supra, 66 P.2d at 964, it is stated that:

"The rule in such cases is that corroborating testimony should tend to show the material facts necessary to establish the commission of the crime. It is not indispensable that such corroboration should be furnished by positive and direct evidence, but proof of circumstances legitimately tending to show the existence of the material facts will be sufficient to authorize a conviction."

The State strongly urges that the presence of the knife at the scene and the woman's cut underwear are sufficient corroboration. In *Howard v. State*, 79 Okl.Cr. 247, 153 P.2d 831 (1944), in Syllabus No. 3 this Court stated:

"In rape case, or alleged attempted rape, corroboration of prosecutrix' contradictory, uncertain, improbable or impeached testimony should be of such dignity as to give it weight with jury on question whether crime was committed and should not consist of such slight circumstances as to leave court and jury to speculate as to such fact and defendant's guilt."

We do not think that the presence of the knife at the scene nor the lady's underwear provided sufficient corroboration inasmuch as their evidentiary value and corroborative effect depended entirely upon the complainant's testimony. See, *Gammel v. State*, 101 Neb. 532, 163 N.W. 854 (1917), rehearing denied 101 Neb. 538, 166 N.W. 250 (1917).

There being no corroboration of the complainant's testimony, then the evidence was insufficient to convict in this case. For the foregoing reasons the judgment and sentence is REVERSED and REMANDED with instructions to DISMISS.