## WILSON PHILLIPS v. STATE.

No. A-9428. April 21, 1938.
(78 P. 2d 828.)

Wylie Snow, of Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. An information was filed in the district court of Coal county, charging that Wilson Phillips did in said county on or about the 5th day of March, 1937, commit the crime of operating and conducting a gambling game, in manner and form as follows:

"Did then and there, wilfully, unlawfully, wrongfully and feloniously conduct a certain gambling game, to wit: Poker, upon which money, checks or other evidences of value were bet and wagered by participants invited to said game by said defendant, and the said defendant was in charge of and did carry on the said gambling game aforesaid in the residence of John Phillips, in the city of Coalgate, Coal county, contrary to," etc.

There was indorsed on the back of the information the names of witnesses, Milton Brown, Lee Pebworth, Bob Adams, and W. F. Gammon. Upon a plea of not guilty a trial was had and a verdict of "guilty as charged in the information and assess his punishment at a fine of $500 and one year in the state penitentiary" rendered.

He has appealed from the judgment rendered upon such conviction.

The errors assigned question the sufficiency of the evidence to sustain the conviction, and that the court erred in admitting incompetent evidence over defendant's objections and exceptions.

The state relied for this conviction upon the testimony of Lee Pebworth, Bob Adams, and W. F. Gammon.

The complaining witness, Milton Brown, did not testify.

Lee Pebworth testified that he was at the residence of John Phillips, father of this defendant, on the 5th day of March, 1937; that Milton Brown, Ray Smith, Wilson Phillips, and witness were playing cards; that he was there for about 30 minutes, and when he left the card game was going on.

He further testified as follows:

"Q. What were you playing? A. We were playing a little poker. Q. Did you buy any chips over there in that game? A. Fifty cents worth. Ray Smith got a dollar's worth. Q. From whom did you buy those poker chips? A. Wilson Phillips. Ray Smith bought a dollar's worth. I don't know how he got them. Q. Did he pay him with a dollar bill? A. Yes, sir. Q. Who was taking off for the house? A. I don't know. Q. How often would he take off? A. I don't remember. Q. You made a statement in this case to me, and I will ask you if you didn't make this statement: By Mr. Snow: We object to his leading the witness. By the Court: You can impeach him if you plead surprise. (Exception allowed.) Q. This is your handwriting (hands witness paper)? A. Yes, sir. Q. You made that statement? A. Yes, sir. Q. How often was he taking off? A. I don't remember how often. Q. Didn't you tell me that this defendant was taking off on every pot? Objection overruled. Exception allowed. A. Yes, sir."

Cross-examination:

"You bantered him for a poker game, didn't you? A. We first started playing cards. Q. Did you have any money? A. No, sir."

Bob Adams testified:

"Q. Are you acquainted with the defendant, Wilson Phillips? A. Yes, sir. Q. Do you remember being over to his place on or about the 5th day of March, last spring? A. I don't remember the date. Q. Do you remember when Ray Smith and Milton Brown were over there and Lee Pebworth? A. I don't remember seeing him. Q. You know Milton Brown? A. Yes, sir. Q. Was he there? A. Yes, sir. Q. What were they doing over there? A. They were gambling a little. Q. What kind of game was going? A. I really don't know whether it was poker or not. Q. Did you see Milton buy any chips? A. I think I seen him get $1.00 worth. Q. Who did he buy them from? A. From Wilson."

Cross-examination:

"Q. You don't know what they were playing? A. No, sir. Q. You wasn't in the game? A. No, sir. Q. Was John Phillips there? A. He was out the other way. We were in the kitchen at the time. He gave him a dollar. Q. You don't know what he gave him a dollar for? A. No, sir."

W. F. Gammon testified:

"Q. Do you remember the occasion about March 5th, 1937, being over at John Phillips' house? A. Yes, sir. Q. Tell the jury what happened over there? A. Well, I seen a card game and four playing. Q. Who were there? A. Milton Brown, Lee Pebworth, Wilson and another fellow I didn't know. Q. How long did you stay there? A. 20 or 25 minutes. Q. Did you see any chips on the table? A. Yes, sir."

Cross-examination:

"Q. You didn't see anybody buy any chips? A. I saw the chips and cards there. Q. No money at all? A. No, sir."

On the part of the defense Raymond Smith testified that about the 5th of March Milton Brown, Lee Pebworth, Wilson Phillips, and he were at John Phillips' house. He further testified as follows:

"Q. Did you play any poker over there? A. We played with cards and chips, but we did not gamble. Q. Did you buy any chips from Wilson? A. No, sir. Q. Did you see anybody else buy any? A. No, sir. Q. When you got through with the game did you cash any chips you had left? A. No, sir. Q. Wasn't any money in that game at all? A. No, sir. Q. You didn't see anybody have any? A. No, sir."

On cross-examination he was asked:

"Q. And you didn't buy a dollar's worth of chips from Wilson? A. No, sir."

As a witness in his own behalf Wilson Phillips testified that he lives in Coalgate, on Broadway; that on the 5th day of March, this year, he was over at John Phillips, his father's home. He then testified as follows:

"Q. Tell the jury just what happened? A. Well, sir, Lee came in and some chips were laying on the table and a deck of cards and Lee said, 'let's play some poker for pastime, and we were sitting there and Milton Brown and Ray came in and Ray Smith said 'What does it cost to get in?' and I said, 'Nothing' and he said 'give me a hand', and we fooled around there I guess 15 or 20 minutes and quit. He just reached over and got some of the chips that were laying there. There was not any money in the game at all? A. No, sir. Q. Did Lee have any money? A. If he did I didn't see it."

John Phillips testified that he remembers the occasion of Milton Brown, Lee Pebworth, Ray Smith, and his son Wilson being at his home about the 5th day of March, this year, and saw them playing cards there; that he played a few hands himself, but there was not any game played for money.

The information was filed under section 2190 of the Penal Code, Okla. St. 1931, 21 Okla. St. Ann. § 941. Under this section, before there can be a conviction for conducting a gambling game played with cards, "for money, checks, credits, or any representatives of value," it must be shown that the defendant opened up or conducted such a game,

"or who either as owner or employee, whether for hire or not, deals for those engaged in any such game."

While it is well settled that this court will not disturb the verdict on account of the evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which every one is entitled who is put upon his trial for an offense. Benson v. State, 10 Okla. Cr. 16, 133 P. 271; Owens v. State, 11 Okla. Cr. 113, 143 P. 204; Jefferson v. State, 31 Okla. Cr. 44, 236 P. 914.

The defendant in this case is entitled to the same presumption of innocence which prevails in other cases, and we are constrained to say that the testimony quoted in full is insufficient to rebut that presumption. We are clearly of the opinion that the verdict is not sustained by sufficient evidence. Ferguson v. State, 52 Okla. Cr. 264, 4 P. 2d 696; Baldwin v. State, 11 Okla. Cr. 228, 144 P. 634; Noll v. State, 10 Okla. Cr. 157, 135 P. 287.

Because the verdict is contrary to the evidence, the judgment of the lower court is reversed.

DAVENPORT, P. J., and BAREFOOT, J., concur.