**J. B. JACKSON, Plaintiff In Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–12237.**

Criminal Court of Appeals of Oklahoma.

Jan. 25, 1956.

ating a gambling game; was tried, convicted and pursuant to the verdict of the jury was sentenced to pay a fine of $1,000 and serve a term of one year in the penitentiary.

Present counsel did not represent the accused at the trial but were employed to present the case on appeal. The following assignments of error are presented: 1. The evidence was insufficient to sustain the conviction. 2. The trial court erred in permitting an amendment to the information after the trial had commenced. 3. The court erred in permitting the witness, Hodgins, to testify in rebuttal. 4. The court failed to instruct upon defendant's theory. 5. The punishment was excessive.

The principal witnesses against the accused were soldiers stationed at Fort Sill. The complaining witness was Victor Paradis who testified that he went to the Jamboree Club located on Highway 277 between Fort Sill and Lawton several times during the months of September and October, 1954. The witness testified that a room had been arranged at the rear of the club where gambling with dice and cards was conducted. He further testified that on the night of October 10, 1954, about midnight or a little thereafter he went to the gambling room at the Jamboree Club and engaged in a blackjack game; that when he entered the room the defendant, J. B. Jackson, was dealing the cards and Jackson was standing behind the table next to the wall at a higher elevation than the other two or three people who were playing blackjack with him. He explained how gambling was done on the blackjack game. He further explained that in an ordinary blackjack game between friends when an individual would make twenty-one or blackjack as it was called, the deal would pass to that individual but in a house game the house man kept the deal and would pay double to the individual who blackjacked. That in the game in which he engaged with Jackson dealing that Jackson continued to deal regardless of whether any of the players got a blackjack. He further testified that he was at the Jamboree Club on October 8, October 3 and twice in September, and that on each

Ozmun, Brock & Fisher, Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

The defendant, J. B. Jackson, was charged by an information filed in the Superior Court of Comanche County with the crime of unlawfully conducting and oper-

of these occasions the defendant Jackson was sitting or standing at the back of the table next to the wall and dealing the cards in the same manner as he had dealt them the early morning of October 11, 1954.

E. A. Hartman, another soldier, testified that during the month of September, 1954, he had seen Jackson in the gambling room playing blackjack but did not remember how many were playing. Hartman testified that he saw money changing hands between Diwayne Hodgins and Jackson; that Jackson was behind the table. That Jackson appeared to be dealing blackjack.

Arvil Robertson, a deputy sheriff, testified to the physical arrangements of the rooms at the Jamboree Club and especially described the appearance of the alleged gambling room which testimony was not too material as the accused testified in his own defense that he was gambling in the room identified by the State's witnesses. The only issue presented was whether the defendant was just another gambler who came there for recreation or whether he was operating or conducting the gambling game.

The defendant testified that he had occasion at various times when he wanted some recreation to go to the Jamboree Club; that he would go there for recreation when he wanted to play blackjack or poker or shoot dice. That when he was in a blackjack game there he was just another player and when he was dealing if one of the other players got a blackjack, which was an ace and a face card, the player had the privilege of taking the deal and that if he did not want to deal, the dealer would pay him double. Defendant admitted being at the club on the night in question when Paradis got into an argument at a dice game in which a commotion was started and Paradis was nicked in the arm by a shot from a gambler at the dice game.

In rebuttal Diwayne Hodgins testified to making trips to the Jamboree Club to gamble. He testified that he had played blackjack at the gambling club in September and October, 1954. That he had never seen anyone else but Jackson deal blackjack on any of the occasions when he was there except on one occasion when Jackson was called to the telephone by "Chic" Carney and while Jackson was gone Carney did the dealing. That the deal did not pass when an individual would blackjack but the house man continued to deal the cards but would pay the person who made a blackjack double the amount that he had gambled.

This prosecution was instituted under the statute which provides:

"Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or per centage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, or who either as owner or employee, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony. * * *" 21 O.S.1951 § 941.

In Phillips v. State, 64 Okl.Cr. 217, 78 P.2d 828, 831, this court held that under the above statute, "before there can be a conviction for conducting a gambling game played with cards, 'for money, checks, credits, or any representatives of value,' it must be shown that the defendant opened up or conducted such a game, 'or who either as owner or employee, whether for hire or not, deals for those engaged in any such game.'" We think under the evidence the jury had a right to conclude that the defendant was conducting and carrying on a gambling game, either as owner or employee. This was not an ordinary room where individuals would gather for a friendly gambling game. It was not a mere coincidence that on each of the occasions when Paradis or one of the other soldiers went to the club to gamble that the defendant was the person who was dealing the blackjack game and as further proof that it was a house game, Paradis stated that the deal never changed hands. Jackson was always at an elevated position with one side of the table to himself while the other players were all on the opposite side of the table.

It is next contended that the trial court erred in permitting the State to amend the information at the close of the defendant's evidence. The information as originally drawn alleged that the crime was committed on October 11, 1954. At the request of the county attorney the trial court permitted him to amend the information by inserting the words "or about," the amended information thus reading that the crime was committed on or about October 11, 1954.

By statute it is provided that an information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant. 22 O.S. 1951 § 304. There was really no reason for the amendment to be made. The State's witnesses fixed the time as shortly after midnight which would have made it the early morning of October 11, 1954, which was the date alleged in the information. There was no dispute as to the time the alleged crime was committed. The defendant admitted he was at the club on the date alleged in the information and at the time mentioned by the witnesses for the State. The element of time was not a material ingredient in the offense so it was perfectly permissible to allege on or about a certain date. 22 O.S.1951 § 405. There was certainly no prejudice resulting to the accused from the amendment.

As to the next assignment of error, the record discloses that Diwayne Hodgins was called as a witness for the State in its case in chief. Counsel for the accused called attention to the fact that the name of the witness was not endorsed on the information and he was excused. Later the witness was called in rebuttal and testified to facts strongly indicative of the guilt of the accused.

Counsel is correct in stating that the evidence of the witness would have been competent in chief but that alone does not render it inadmissible in rebuttal if it tends to refute evidence introduced on behalf of the defendant. In the early case of Tingley v. State, 16 Okl.Cr. 639, 184 P. 599, this court laid down the rule regarding rebuttal testimony which has been consistently followed. It was there held:

"It is discretionary with the trial court, in furtherance of justice, to permit evidence in rebuttal which would have been competent evidence in chief."

It is contended that the court erred in that it failed to instruct upon the defendant's theory of the case. In that connection counsel states that the instructions which were given to the jury were general instructions and nowhere in the instructions was the jury advised that if they found the accused was merely a participant in the game and was not operating or conducting the game, he should be found not guilty.

We have carefully read each of the instructions which were given. No exceptions were taken to any of them. The specific elements of the offense were stated and the jury instructed that before a conviction could be had the State had the burden to prove such elements beyond a reasonable doubt. There was no request for an instruction covering the purported theory of the defendant. In fact, there were no requested instructions. Neither was this question presented in the motion for new trial nor in the petition in error filed in this court. For all of those reasons this assignment of error cannot be sustained.

We think there is some merit to the contention of the accused that the punishment was excessive and probably the result of the admission of evidence which tended to prejudice the jury against the defendant. This was the testimony of the witness Paradis concerning a fight which he had in the Jamboree Club with the operator of a dice game the night in question. Paradis testified that he thought he detected the house man (not the defendant) switching dice and called his hand; that the house man pulled a pistol and commenced hitting Paradis over the head and in the altercation the gun was discharged striking Paradis in the arm and wounding him slightly. Another witness for the State testified that immediately after the altercation he saw Jackson in the parking lot behind a car with a pair of brass knucks on

his hands. It is true that a part of this evidence was admitted without objection and some of it was due directly to questions elicited by counsel for the defendant in cross-examination of Paradis. However, after a consideration of this evidence and the entire record, we feel that justice will be served by modifying the penitentiary sentence to a term of six months.

It is therefore ordered that the judgment and sentence of the Superior Court of Comanche County be modified from one year in the penitentiary and a fine of $1,000 to six months in the penitentiary and a fine of $1,000 and the judgment and sentence as thus modified is affirmed.

BRETT and POWELL, JJ., concur.