Dear Representative Benge,
¶ 0 This office has received your requests for an official Attorney General Opinion in which District Attorney Boring asks, in effect, the following questions:
 Do poker tournaments violate either the general anti-gambling laws of Oklahoma, 21 O.S. 2001, §§ 941-962[21-941-962], or the State anti-commercial gambling statutes, 21 O.S. 2001, §§ 981-988[21-981-988], where:
 a. participants are charged $125.00 to play in a poker tournament,
 b. $25.00 of the fee is retained by the tournament holder to cover entry and the cost of meals to be served,
 c. $100.00 of the entry fee is placed in the pot to be paid back to the winners of the tournament,
 d. each player receives a fixed number of poker chips representing sums in the range of $2,500 to $5,000,
 e. individual chips, regardless of the face value indicated on the chips, have no specific redeemable value,
 f. players may not cash in their chips for money or other forms of reimbursement,
 g. the tournament winners are the last four players having chips,
 h. the tournament first prize winner is the player ending up with all the chips,
 i. the total prize money is determined by the total number of players at $100.00 each — the amount each player contributes to the pot to be paid back to the winners, and
 j. the prize money is split between the last four players, with 40% going to the first prize winner, and the balance being divided 30%, 20% and 10% to the next three places.
And Representative Benge asks, in effect, the following question:
 Do "free" poker games in which no consideration for entry is required but prizes are awarded, violate the general anti-gambling laws of Oklahoma, 21 O.S. 2001, §§ 941-962[21-941-962]?
 I. General Anti-Gambling Laws A. ¶ 1 Those Who Open, Conduct or Carry on Poker Tournaments, InWhich Some or All of the Participants' Entry Fees Are Pooled andPlaced in a Pot to be Paid Back to the Tournament Winners, Commita Felony. Participants Who Play in Such Tournaments Commit aMisdemeanor.
¶ 2 Among other things, the general anti-gambling laws of Oklahoma prohibit both conducting gambling games — which include poker — and playing such games for money, property, checks, credit or other representatives of value. See 21 O.S. 2001, §§ 941-962[21-941-962]. At Section 941, the general anti-gambling laws prohibit opening, conducting or carrying on various prohibited games, including poker. That section provides:
 Except as provided in the Oklahoma Charity Games Act, every person who opens, or causes to be opened, or who conducts, whether for hire or not,
or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, or who either as owner or employee, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than Five Hundred Dollars ($500.00), nor more than Two Thousand Dollars ($2,000.00), and by imprisonment in the State Penitentiary for a term of not less than one (1) year nor more than ten (10) years.
Id. (footnote omitted) (emphasis added).
¶ 3 This provision deals with game operators who open, conduct, or carry on the prohibited games played "for money, checks, credits, or any representatives of value," and also those who deal for those engaged in such games. Id. Those found guilty of such prohibited acts are guilty of a felony. Id.
¶ 4 Participants in such prohibited games are also guilty of a crime, a misdemeanor. 21 O.S. 2001, § 942[21-942]. Section 942, which prohibits playing such games, provides:
 Any person who bets or plays at any of said prohibited games, or who shall bet or play at any games whatsoever, for money, property, checks, credits or other representatives of value with cards, dice or any other device which may be adapted to or used in playing any game of chance or in which chance is a material element, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than Twenty-five Dollars ($25.00), nor more than One Hundred Dollars ($100.00), or by imprisonment in the county jail for a term of not less than one (1) day, nor more than thirty (30) days, or by both such fine and imprisonment.
Id. (emphasis added).
¶ 5 Case law dealing with these general anti-gambling prohibitions makes clear that a key element of the crime in both Sections 941 and 942 of Title 21 is conducting or playing such prohibited games "for money, checks, credits, or anyrepresentatives of value." Phillips v. State, 78 P.2d 828,831 (Okla.Crim. 1938); Brown v. State, 113 P. 219, 220
(Okla.Crim. 1911).
¶ 6 Because a required element of the crimes prohibited by these general anti-gambling provisions is the playing of aprohibited game for "money, property, checks, credits or otherrepresentatives of value," and because the individual chips provided the players in the poker tournaments have no specific redeemable value and may not be cashed in for money or other forms of reimbursement, District Attorney Boring asks whether such poker tournaments are in fact played for "money, property, checks, credits or other representatives of value." 21 O.S.2001, § 942[21-942].
¶ 7 The answer to your inquiry is that the poker tournaments you describe violate the general anti-gambling provisions found at 21 O.S. 2001, §§ 941[21-941] and 942, because the participants in the tournament are playing for money. The players in the poker tournaments you describe pay an entry fee, almost all of which is placed into a pot which is paid back to the winners of the tournament. Those playing in the poker tournament all play to win the tournament and are all playing for an opportunity to be paid one of the four prizes in the tournament. The last four players in the tournament receive prizes. The first prize winner — the player ending up with all the chips — is paid forty percent (40%) of the pot composed of the pooled entry fees. The second prize winner is paid thirty percent (30%) of the pot, the third prize winner is paid twenty percent (20%) of the pot, and finally the fourth prize winner is paid ten percent (10%) of the pot. The total prize money is determined by the total number of players, as $100.00 of the entry fee paid by each payer is placed into the pot. Everyone playing in the tournament is playing poker to win a percentage of the pot. Neither the fact that players have to win more than one hand to be a winner, nor the fact that not everyone who plays is a winner, changes the fact that all participants are playing poker for money.
¶ 8 Playing a prohibited game — poker — for money falls within the prohibitions of 21 O.S. 2001, § 942[21-942], which makes it a crime for any person to bet or play in any of the prohibited games "for money, property, checks, credits or other representatives of value." Id.
¶ 9 Similarly, those who run such poker tournaments (by opening or causing to be opened, or conducting or carrying on or dealing in such tournaments), as such tournaments are being played for money, violate 21 O.S. 2001, § 941[21-941], which makes such conduct a felony.
 B. ¶ 10 A Free Poker Game in Which No Consideration for Entry orAcquiring Chips Is Paid but Which Is Played for a Prize Is StillPoker Played for Money or Other Representative of Value and ThusViolates Provisions of Oklahoma's General Anti-Gambling Laws.
¶ 11 As noted above, at 21 O.S. 2001, § 941[21-941], the general anti-gambling laws prohibit opening, conducting or carrying on various prohibited games including poker. Under that provision, every person who "opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps . . . for money, checks, credits, or any representatives of value" is guilty of a felony. Id.
¶ 12 Participants in such games also commit a crime, as under21 O.S. 2001, § 942[21-942] any person who "bets or plays at any ofsaid prohibited games, or who shall bet or play at any gameswhatsoever, for money, property, checks, credits or otherrepresentatives of value with cards," is guilty of a misdemeanor. Id. (emphasis added).
¶ 13 Thus, playing poker "for money, property, checks, credits or other representatives of value," or conducting such games violates the Oklahoma Criminal Code, even when no entry fee or consideration is paid to participate in such a game. Id. This is so because the law not only prohibits placing a bet, it also prohibits playing such games "for money, property, checks,credits or other representatives of value." Id. (emphasis added).
 II. Anti-Commercial Gambling Laws ¶ 14 Poker Tournaments in Which Part or All of theParticipants' Entry Fees Are Pooled and Paid Back to theTournament Winners Do Not Fall Within the "Purses, Prizes orPremiums" Exception to the Definition of "Bet" in Section 981 ofTitle 21, and Thus Such Tournaments Violate Oklahoma'sAnti-Commercial Gambling Laws.
¶ 15 District Attorney Boring asks whether poker, played as described, falls within the exception to the definition of "bet" at 21 O.S. 2001, § 981[21-981]. That exception in the anti-commercial gambling laws excludes from the term "bet" entry fees paid by participants in public and semi-public events such as tournaments in which "purses, prizes or premiums" are offered to the actual participants in those events. Id. § 981(1)(c).
¶ 16 In pertinent part, the definition of "bet" in 21 O.S.2001, § 981[21-981], provides:
As used in this act:[1]
 1. A "bet" is a bargain in which the parties agree that, dependent upon chance, or in which one of the parties to the transaction has valid reason to believe that it is dependent upon chance, one stands to win or lose something of value specified in the agreement. A bet does not include:
. . . .
 c. offers of purses, prizes or premiums to the actual participants in public and semipublic events, as follows, to wit: Rodeos, animal shows, hunting, fishing or shooting competitions, expositions, fairs, athletic events, tournaments and other shows and contests where the participants qualify for a monetary prize or other recognition. This subparagraph further excepts an entry fee from the definition of "a bet" as applied to enumerated public and semipublic events.
Id. (emphasis added).
¶ 17 In the context of the poker tournaments you describe in detail in your inquiry, the question presented is: are such poker tournaments offers of exempted "purses, prizes or premiums" to actual participants in a public or semi-public event of the type and nature enumerated in 21 O.S. 2001, § 981[21-981]?
¶ 18 This office looked at a similar question in Attorney General Opinion 99-5, in the context of "money hunts" in which persons entered hounds into a contest in which the hounds hunt other animals, such as raccoons. Id. at 32. Each participant in the hunts paid cash or other items of value as entry fees, which were pooled. Id. The pooled entry fees — as in the poker tournaments you describe — became the stakes or pot for the contest. The pot was distributed to winning contestants in gradations varying in accordance with the performance of their hunting hounds. Id. In Attorney General Opinion 99-5, we concluded that such hunts did not fall within the "purse, prize or premium" exemption to the definition of "bet," as that term is used in Oklahoma's anti-commercial gambling laws. Accordingly, we stated:
 The phrase "purses, prizes or premiums," and the individual terms therein, have been the topic of much analysis by the courts of other states, and have a definite and well-known meaning at common law. The law on this issue draws a distinction between contests for "purses, prizes or premiums" contributed solely by associations or other persons that do not compete for the "purses, prizes or premiums,"
and contests where the stake is contributed by the contestants themselves, and the successful contestant is to have the fund thus created. In the case of "purses, prizes or premiums," the donor or person offering the same has no chance of gaining back the "purse, prize or premium" offered but, "if he abides by his offer, he must lose it," whereas in the case of a "stake, bet or wager," each party interested therein has a chance of gain and suffers a risk of loss. In other words, in the case of a bet, the money belongs to those who post it, "every one of whom has a chance to win it." In the case of a "purse, prize or premium" the money belongs to the person or association offering it, and such person or association has no chance to win it, but rather is certain to lose the amount.
Id. at 34-35 (footnote omitted) (citations omitted) (emphasis added).
¶ 19 We thus concluded that the money pooled by the contestants in the hunts was a bet and did not fall within the "purses, prizes or premiums" exception to the definition of bet in Section 981 of Title 22. A.G. Opin. 99-5 at 34-37.
¶ 20 The transactions described in the poker game posed in your question are — like the hunts considered in Attorney General Opinion 99-5 — transactions in which the entry fees paid by the participants are pooled, with every participant having a chance to win a portion of the pool. Under a poker game such as you describe, the contestants would each pay an entry fee of $125.00, $100.00 of which, as you described it, is "placed in a pot to be paid back to the winners of the tournament."[2] Such a transaction, under the analysis employed in Attorney General Opinion 99-5, is a bet and does not fall within the "purses, prizes or premiums" exception to the definition of a "bet" in 21O.S. 2001, § 981[21-981], as, under that analysis, entry fees which are pooled and paid back to winners are not purses, prizes or premiums. Rather, they are stakes, bets or wagers that fall within Section 941's definition of a "bet."
¶ 21 Oklahoma's anti-commercial gambling statutes at 21 O.S.2001, § 981[21-981](4), define a "gambling place" as "any place, room, building, vehicle, tent or location which is used for any of the following: making and settling bets[.]" At section 982(A) of Title 21, the anti-commercial gambling laws provide that commercial gambling is:
 1. Operating or receiving all or part of the earnings of a gambling place;
. . . .
 3. For gain, becoming a custodian of anything of value bet or offered to be bet[.]
Id.
¶ 22 A poker tournament in which the players' entry fees are pooled and paid back to the tournament winners involves betting. Because a gambling place is any location used, among other things, for making and settling bets, and as the operators of poker tournaments are the custodians of the entry fee and also receive proceeds from the tournament, the tournament operators are involved in commercial gambling, which under subsection (B) of 21 O.S. 2001, § 982[21-982] is a felony.
¶ 23 In sum, those who conduct and run a poker tournament in which all or part of the entry fees are pooled and paid back to tournament winners, violate provisions of the Oklahoma's anti-commercial gambling laws. Id. Further, as discussed above, the general anti-gambling laws make playing poker for money, checks, credits, or other representatives of value a crime, and conducting such poker games a crime. 21 O.S. 2001, § 941[21-941]. The poker tournaments you describe would thus violate both the State's anti-commercial gambling laws and the State's general anti-gambling laws.
¶ 24 In reaching these conclusions, we note that federally recognized Indian tribes that enter into the Model Tribal Gaming Compact (3A O.S. Supp. 2004, §§ 281-282[3A-281-282]) set forth in the State-Tribal Gaming Act, 3A O.S. Supp. 2004, §§ 261-282[3A-261-282], may lawfully operate — and their patrons may lawfully play — nonhouse-banked card games for money, checks, credit checks, and/or representatives of value.
¶ 25 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Participants who play in a poker tournament in which some or all of the entry fees paid by participants are pooled and placed in a pot to be paid back to the tournament winners, are guilty of playing a prohibited game for "money, property, checks, credits or other representatives of value" under the provisions of 21 O.S. 2001, § 942[21-942].
 2. Those who operate a poker tournament in which some or all of the entry fees paid by participants are pooled and placed in a pot to be paid back to winners of the tournament, violate the provisions of 21 O.S. 2001, § 941, which prohibits opening, conducting, or carrying on prohibited games, such as poker, played for "money, checks, credits, or any representatives of value."
 3. Participants who play in a poker tournament for "money, property, checks, credits or other representatives of value" are guilty of a misdemeanor under the provisions of 21 O.S. 2001, § 942, even when the participants are not required to pay an entry fee or otherwise pay consideration to participate in such games.
 4. Those who open, cause to be open, conduct, whether for hire or not, or carry on poker tournaments in which participants play for "money, property, checks, credits or other representatives of value" are guilty of a felony under the provision of 21 O.S. 2001, § 941, even when there is no requirement that those participating in the poker tournament pay an entry fee or otherwise provide consideration for playing such game.
 5. Persons who operate or receive part of the earnings of a poker tournament in which all or part of the entry fees paid by participants are pooled and placed in a pot to be paid back to the tournament winners, or who become custodians of the pooled entry fees in such a tournament, are engaged in commercial gambling prohibited by 21 O.S. 2001, § 982[21-982].
 6. Under Oklahoma's anti-commercial gambling statutes, specifically 21 O.S. 2001, § 981(1), the entry fee paid by participants in a poker tournament, in which all or part of the entry fees is pooled and placed in a pot to be paid back to the winners of a tournament, constitutes a "bet" as defined in that section.
 7. Federally recognized Indian tribes that enter into the Model Tribal Gaming Compact (3A O.S. Supp. 2004, §§ 281-282[3A-281-282]) set forth in the State-Tribal Gaming Act, 3A O.S. Supp. 2004, §§ 261-282[3A-261-282] may lawfully operate — and their patrons may lawfully play — nonhouse-banked card games for money, checks, credit checks, and/or representatives of value.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 NEAL LEADER Senior Assistant Attorney General
[1] 21 O.S. 2001, §§ 981-988.
[2] See letter from James M. Boring, District Attorney, Guymon, to Tom Gruber, First Assistant Attorney General (Oct. 27, 2004) (on file with the District Attorney's office).